[Civ. No. 10506. Second Appellate District, Division One.—April 2, 1936.]

COUNTY OF LOS ANGELES, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, SIDNEY R. GARFIELD and ESTHER PATRICIA ALLEN, Respondents.

Everett W. Mattoon, County Counsel, and Fred M. Cross, Deputy County Counsel, for Petitioner.

Everett A. Corten for Respondents.

WHITE, J., *pro tem.—Certiorari* to review an award and supplemental award of the Industrial Accident Commission, made in favor of Esther Patricia Allen, with a lien thereon inuring to the benefit of Dr. Sidney R. Garfield against unpaid compensation in the sum of $2,562.98.

The facts are as follows: Esther Patricia Allen, aged 21, was employed by the County of Los Angeles in the Los Angeles County General Hospital as a graduate student nurse. From March 19, 1934, to and including May 27, 1934, the nurse was on duty in the psychopathic ward. From May 28, 1934, to May 31, 1934, she was in the ear and nose clinic. The nurses in the psychopathic ward ate with the nurses in their dining room in what is known as the contagious diseases building. There were ten nurses in the psychopathic ward, and out of this number four contracted poliomyelitis, commonly known as infantile paralysis. There were four nurses and a resident physician in the ear and nose clinic. Out of this number three nurses and a resident physician contracted poliomyelitis. All told, about 250 nurses and doctors in the county hospital contracted the disease. The ear and nose clinic treats patients afflicted with poliomyelitis, as a nasal discharge or running nose is one of the symptoms of this disease. It was further testified that poliomyelitis is most infectious and contagious.

The employee in this case contracted the disease herself, and was admitted to the general hospital as a patient approximately June 5, 1934. On June 28, 1934, a request was made for special nurses. There was sufficient evidence in the record to justify the commission in concluding that due to the

fact that the epidemic was getting under way at that time and the hospital was crowded with new cases coming in at all times, a scarcity of nurses existed, which prevented furnishing of a special nurse to the employee except during the acute stage of her illness. In this connection, Dr. Vernon Luck, a resident physician at the general hospital, testified, "At that time we were reaching the high point of our epidemic; it would be difficult to describe to you the picture that existed at that time without your actually seeing it. Cases are coming in by the scores, and the wards are filling up and becoming crowded; everyone has more to do than he knows how to accomplish."

Dr. Garfield, who had previously been an interne at the county hospital, and knew the employee herein, advanced the money to pay for private nurses.

The employee developed a mental condition bordering on psychosis, according to the testimony of Dr. Luck, the resident physician at the county hospital, and Dr. Francis, the resident orthopedist. Dr. Garfield was of the opinion that in order to obtain beneficial results in the treatment of this case it would be necessary to remove the employee to another hospital where special diet could be provided, more detailed care given, and more healthful environment obtained. After various conferences between Dr. Garfield, who was treating the employee, other general hospital physicians, and Dr. Sloane, who was in charge of industrial accident cases for the county arising in the fifth supervisorial district, where the general hospital was located, the patient was taken, with the knowledge and consent of Dr. Sloane and other county general hospital physicians, to Dr. Garfield's hospital at Mecca. While there was some conversation with a Mrs. Keese, who arranges for transfer of county employees out of the general hospital, and through her with the county auditor's office, it is conceded that the removal of this employee from the county hospital to Dr. Garfield's hospital at Mecca was without specific authorization of the board of supervisors. The evidence before the respondent commission indicates that after the employee was transferred to the hospital at Mecca she made steady improvement up to November 2, 1934, when, in the opinion of the doctors at the Mecca hospital, she would be further benefited if she had the advantage of a pool for physiotherapy, also special food, and pleasant environment. Ac-

cordingly, Dr. Garfield selected Arrowhead Springs and transferred Miss Allen there. While at Arrowhead a full-time nurse was in attendance upon Miss Allen. Dr. Garfield from time to time forwarded bills to petitioner and the general hospital for expenses incurred in the hiring of nurses and for hospitalization at the Mecca hospital and Arrowhead Springs hotel, which bills the county refused to pay.

The County of Los Angeles, petitioner herein, urges that the award and supplemental award of the respondent commission should be annulled, on the grounds: (1) that the finding of the commission that the employee contracted poliomyelitis with resulting disability in the course of and arising out of her employment is unsupported by substantial evidence and is mere speculation and conjecture; (2) that the commission failed to make a finding of any contract or agreement by the county whereby the county became obligated for the charges which the commission awarded against it.

We are of the opinion that there was before the Industrial Accident Commission substantial evidence to support its finding that the employee contracted the disease out of and in the course of her employment and therefore confer upon the commission jurisdiction to render the decision against petitioner herein. The writ of *certiorari* can be used only for the purpose of ascertaining whether the board, officer, or inferior tribunal has exceeded its jurisdiction. The action of the respondent commission herein sought to be reviewed is final and conclusive upon every question except questions of jurisdiction. There was an abundance of evidence adduced before the commission upon which it could reasonably find that the employee's exposure to this contagious disease in the course of her employment resulted in her affliction. The writ of *certiorari* cannot be used for the purpose of determining whether or not the evidence was sufficient in the opinion of the reviewing court to support the particular decision complained of, provided the inferior tribunal had jurisdiction, and the record discloses substantial evidence to support the decision. (*Garvin* v. *Chambers,* 195 Cal. 212 [232 Pac. 696] ; *Central Pac. R. R. Co.* v. *Board of Equalization,* 43 Cal. 365; *Winning* v. *Board of Dental Examiners,* 114 Cal. App. 658 [300 Pac. 866].) Where the board or tribunal whose decision is sought to be reviewed has acted upon a conflict of evidence, and where it has not acted upon

an entire absence of any competent evidence, it has not exceeded its jurisdiction, and a reviewing court will not, under such circumstances, interfere with or annul the decision rendered by the inferior tribunal, commission, officer, or board. (*Osborne* v. *Baughman*, 85 Cal. App. 224, 225 [259 Pac. 70].)

■ We do not find it necessary to decide whether or not any valid contract existed between the county and this employee or Dr. Garfield, because in our opinion the county's liability, if any, is not of a contractual nature, but is statutory. Section 9 (a) of the Workmen's Compensation Act provides that it is the duty of the employer to provide "such medical, surgical and hospital treatment, including nursing . . . as may reasonably be required to cure and relieve from the effects of the injury, the same to be provided by the employer, and in case of his neglect or refusal seasonably to do so, the employer to be liable for the reasonable expense incurred by or on behalf of the employee in providing the same". Our Supreme Court has held that the medical treatment required by the Workmen's Compensation Act to be furnished an injured employee by his or her employer is such as will reasonably and seasonably tend to relieve and cure the injured employee from the effects of the injury. (*Union Iron Works* v. *Industrial Acc. Com.*, 190 Cal. 33 [210 Pac. 410].)

■ The test of the employee's right to seek private treatment seems to be that if the treatment supplied by the employer does not within a reasonable time effect a cure, and the employee thereafter obtains different treatment from his own physician which does seasonably benefit or cure him, he has established the inadequacy of the treatment previously tendered by the employer, and where the services furnished by the employer were inadequate or inefficient the employee is justified in changing to his or her own physician, for whose services the employer is liable. (71 Cor. Jur. 780.)

There was evidence before the commission that the treatment being received by the employee from the employer at the general hospital was not such as would seasonably or adequately cure and relieve the employee from the effects of the disease contracted by her. As a part of such evidence we quote the following testimony given by Dr. Luck, one of the resident physicians at the county general hospital:

"Q. Do you think that her treatment, her medical treatment at the hospital in October up to the time she was removed, was reasonably adequate for that type of case?

"A. It proved entirely inadequate during the several weeks that preceded her removal, preceding October 11—

"Q. You mean she did not improve, is that correct?

"A. That's right.

"Q. Were you using your best efforts to the best of your ability and the best facilities of the hospital to treat the patient the best way you knew how in that type of a case?

"A. Yes.

"Q. Do you think anybody else could have done any better?

"A. Not at that hospital."

As to whether or not the treatment accorded the employee by Dr. Garfield after the employee's removal from the county general hospital was successful, we again quote from the testimony of Dr. Luck:

"A. . . . that is very well borne out in her case because she left here with muscles that were tender, seriously impaired as far as their strength was concerned, and in a short time after being down there, with essentially the same physical treatment but with an entirely new environment, the tenderness left and she cleared up mentally; the muscle strength came back."

It seems to us this case comes within the holding of the Supreme Court of this state in *Union Iron Works* v. *Industrial Acc. Com., supra,* where at page 41 of the opinion is found the following language:

"Before the injured employee would be entitled to compensation for expenses incurred in the treatment of him by a physician of his own selection it would have to be shown that the treatment not only was a success but that it was reasonably and seasonably necessary to cure and relieve the injured employee. Moreover, all the circumstances attending the treatment by the employer's physician would have to be weighed by the commission in order to determine whether or not the treatment prescribed by the employer's physicians, would, if it had been persisted in, have produced as speedy and as satisfactory a cure as did the treatment of the physicians resorted to by the injured employee. And, of course, in coming to a conclusion in this behalf, the commis-

sion would necessarily take into consideration the period of time covered by the treatment of the employer's physicians and the results obtained during that time. In other words, the injured employee will be permitted, at the peril of having himself to pay the expenses of medical treatment, to secure the services of physicians other than those provided by his employer, and this peril will attach unless it can be shown from all of the circumstances of the situation, including the success of the operation, that his desire and decision to secure the services of other physicians was warranted.

"On the other hand, if we were to hold, as petitioners contend, that the only duty of the employer is to provide competent physicians who prescribe a particular course of treatment, it would mean that if the physicians of the employer, even though they in good faith persisted in a course of treatment manifestly ineffective and demonstrated ultimately to be wrong and *ineffectual* [italics ours], the employee, nevertheless, would be compelled to continue under such treatment or secure at his own expense effective surgical treatment. This cannot be so. In *Massachusetts Bonding etc. Co.* v. *Pillsbury,* 170 Cal. 767, 770 [151 Pac. 419], this court held that although in the first instance the employer had a right to designate the physician who should attend the injured employee, nevertheless, if becoming dissatisfied the injured employee was directed to another physician who was out of town, the injured employee was not bound to wait indefinitely for his return, but could seek the advice of his own physician, and the employer would be liable for the expense so incurred. . . . "

So in the instant case, the injured employee, according to the testimony before the commission, became dissatisfied with the course of treatment at the general hospital, and in fact, according to the testimony, developed a mental condition that bordered on a psychosis; but the employer in this case, by reason of the infantile paralysis epidemic, with which seven or eight per cent of the employees in the general hospital were afflicted, was unable to supply special nurses and special diets, and otherwise adequately care for the employee; whereupon the injured employee accepted the services of, and hospitalization by, a physician of her own selection. The action of the employee in this case, it seems to us, was based upon reasonable and proper grounds in availing herself of

the services of her own physician in the latter's hospital at Mecca, and later at Arrowhead Springs; and in view of the circumstances shown herein, including the successful result of the treatment after removal from the county general hospital, it cannot be denied that the injured employee acted reasonably and upon proper grounds in availing herself of the services of Dr. Garfield and efficacious treatment at the Mecca hospital and Arrowhead Springs. While it may be, as petitioner contends, that Dr. Garfield voluntarily undertook treatment of Miss Allen, and did not come into the case at her solicitation, we are of the opinion that nevertheless the employee had a right to avail herself of the proffered services of Dr. Garfield if such action on her part was founded upon reasonable grounds in so doing.

It might also here be stated that while it is true the board of supervisors on February 11, 1935, denied the claim for expenses incurred in the treatment of this employee at Mecca and Arrowhead Springs, still, after the employee had been returned to the general hospital on February 5, 1935, we find from the record that her condition, while then much improved, became worse, and symptoms which manifested themselves during her original stay at the county hospital began to recur. When this was called to the attention of the board of supervisors, notwithstanding the fact that theretofore they had rejected the employee's claim for expenses incurred in obtaining treatment at Mecca and Arrowhead Springs, the record discloses that on March 11 the board of supervisors in regular session ordered that authority be given for the transfer of this employee from the general hospital to the Mecca hospital for hospital care under the Workmen's Compensation Act, and authorized payment for her hospitalization and for a special nurse. It would seem to-us that this action of the board of supervisors, taken, as the record shows, on a report by the executive superintendent of the county general hospital, and approved by the superintendent of charities, admitted the inadequacy of treatment at the county general hospital that would prove beneficial to the employee, and conceded the beneficial results that had accrued from her hospitalization at the Mecca hospital.

Petitioner contends that there is no finding by the commission, *nor was there evidence*, that the treatment being furnished the patient by the county was *inadequate or* in-

ferior, nor is there any *finding or evidence* that the employer failed or refused to furnish *adequate treatment.* While it is true the commission made no. finding upon this issue, we do not find ourselves in accord with petitioner's contention that there was no evidence to support such a finding, for the reason that petitioner's own general hospital resident physicians testified that the prevalence of the epidemic, and the large number of general hospital employees stricken with infantile paralysis, impaired considerably the hospital facilities for properly treating this employee, and that the existence of so many infantile paralysis cases around and about her in the general hospital tended to affect her to a point where she was bordering on a psychosis, necessitating, among other things, a change of environment from the county general hospital to effect a cure; and these facts were undisputed. From the facts found, and from the award ordered, it is evident, in the light of the entire record, that if more complete findings had been made they would have been adverse to the contentions of the petitioner on the issue of the adequacy or inadequacy of the treatment furnished by the county general hospital as compared with the treatment received at Mecca and Arrowhead Hot Springs. That being so, the failure to find further than the commission did is not a ground for annulling the award. (*Hulen* v. *Stuart,* 191 Cal. 562, 572 [217 Pac. 750].) The weight of authority seems to be that where findings if made on an issue would necessarily have been against the appellant, or petitioner, as the case may be, the failure to find is not ground for reversal of a judgment or annulment of an award. (*Swim* v. *Ackel,* 127 Cal. App. 516, 518 [15 Pac. (2d) 1110].)

For the foregoing reasons, it is ordered that the award and supplemental award of the respondent commission be, and the same are, hereby affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 28, 1936, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1936.