[Civ. No. 8486.   Third Dist.   Jan. 5, 1954.]

UNITED STATES CASUALTY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and GAE P. MOYNAHAN, Respondents.

Mullen & Filippi for Petitioner.

Everett A. Corten, T. Groezinger and James A. Clayton for Respondents.

PAULSEN, J. pro. tem.*—Petitioner, an insurance carrier, seeks the annulment of an award of the Industrial Accident Commission in which respondent Gae P. Moynahan was

*Assigned by Chairman of Judicial Council.

found to have suffered an industrial injury and was awarded compensation benefits, including self-incurred medical expenses.

According to the testimony of Mrs. Moynahan she was 39 years of age and was employed as a bookkeeper by the Sonotone Corporation. While she was stocking shelves a heavy box of batteries fell upon her and injured her right breast. At the time she did not report this to her employer or request medical care but went to her own physician, Dr. Arthur F. Wallace. He treated her for a cracked rib, which she was not sure resulted from that accident, but did not treat her breast, although it was bruised. Her breast continued to be sensitive until October, 1951, at which time she returned to Dr. Wallace. Examination revealed a cancerous condition of the breast and it was removed on November 7, 1951. She returned to work on the 23d of that month. She first discussed the matter with the local manager of Sonotone Corporation, Mr. Trousdale, in August, 1951, but made no official report or demand for compensation or medical assistance until five days after her operation.

The employer's manager, Mr. Trousdale, on learning of Mrs. Moynahan's contentions, wrote to his home office and received in reply a letter informing of the name of the local representative who would handle the claim, i.e., Brown Brothers.

Mr. Trousdale called Brown Brothers on November 23, 1951, and a representative from the adjusting agency came out and took a personal report from respondent Moynahan. She did not hear from Brown Brothers for some time. Then she called them and they had done nothing about it. She called every day for over two weeks and they still had no report on the accident and had heard nothing from the insurance company (petitioner). She talked to Mr. Trousdale about three or four weeks after she reported the accident on November 12, 1951. He called Brown Brothers and learned they had not heard from the insurance company. Mr. Trousdale called about three weeks later and the man who had been handling her case was no longer with the company. She next heard from Brown Brothers some time in the latter part of December, 1951. At this time a man told her he had written letters on it to the insurance company.

After that she called them practically every day but had no satisfaction. Most of the time the girl who answered the telephone informed her that no one was in the office who

was cognizant of her case. Twice she did get in touch with someone who knew about it. The first time she was told he had not received word from the San Francisco office of petitioner and would call within two or three days. He did not call back. Three weeks or a month elapsed and she got no call and had no reply. Brown Brothers finally assigned another man to the case, a Mr. Carrico.

Mr. Carrico called her two weeks prior to April 22, 1952, to arrange an examination on April 22d by Dr. McKibbin. About five weeks after Mr. Carrico called to arrange the examination with Dr. McKibbin of April 22, 1952, she contacted the office of Brown Brothers and was told the adjuster had written petitioner and was awaiting a reply. Afterwards the insurance company wanted to arrange another examination for July of 1952 but it was never so arranged.

About this time Mr. Trousdale wrote a letter to the home office wondering why applicant had not received a reply from Brown Brothers. Mr. Trousdale received in response a letter dated July 16, 1952, stating that the carrier had been contacted and they wished to arrange for a second medical examination and would let Sonotone know of further developments.

During this period several letters passed between Mr. Trousdale and his home office, clearly indicating that efforts were being made to get petitioner or its adjusters to investigate and act on the claim; and that petitioner was aware of the efforts of the employer to have some kind of action taken.

For some time after Mr. Trousdale had received the letter of July 16, 1952, Mrs. Moynahan continued her efforts to secure information from Brown Brothers but received none. In August she was told by a clerk in their office that petitioner had decided her claim was noncompensable. Immediately after that the home office advised her that she might bring the matter before the Industrial Accident Commission if dissatisfied.

The finding of the commission that the injury occurred on March 13, *1951,* is challenged as unreasonable and based on speculation.

Dr. Wallace, testifying with the aid of his office records, stated that the original treatment was given in March, *1950*; that he treated Mrs. Moynahan for gastroenteritis in March, 1951; and that she came in on November 1, 1951, complaining of a cold and "coincidentally mentioned that she had just recently noticed a lump in her breast."

■ It must be admitted that the testimony of Dr. Wallace, supported by his office records, points most persuasively to the earlier date. However, Mrs. Moynahan testified that the injury occurred on March 13, 1951. The commission, faced with this conflict, found that it occurred on the later date, and the binding nature of such a finding, based upon conflicting evidence, is too well established to require citation of authority.

Petitioner contends that the evidence is insufficient to establish a causal relationship between the accident and the cancer.

■ An award of compensation may not be based upon surmise, conjecture or speculation. (*Owings* v. *Industrial Acc. Com.*, 31 Cal.2d 689 [192 P.2d 1]; *William Simpson Const. Co.* v. *Industrial Acc. Com.*, 74 Cal.App. 239 [240 P. 58].) ■ But whether or not there is such a relationship is a subject peculiarly within the realm of expert medical opinion. (*Children's Hospital Soc.* v. *Industrial Acc. Com.*, 22 Cal.App.2d 365 [71 P.2d 83]; *Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 140 Cal.App. 482 [35 P.2d 366]; *William Simpson Const. Co.* v. *Industrial Acc. Com.*, *supra*.)

■ The finding of the commission was based upon the testimony of Dr. Wallace who stated that "there are numerous reports in the medical literature stating that a single trauma has been the provoking cause of cancer. No one knows, actually, of course, what causes cancer, and experimentally it has been caused hundreds of different ways, including trauma. . . . I would not be able to say whether trauma caused it in this incident, but it is suspicious, and I would, in all fairness to the patient, have to say it could be a probable cause. . . ." In his medical report, received in evidence, he expressed the opinion "that the trauma most probably instituted the formation and growth of the tumor." On cross-examination, the doctor stated the relationship at times in terms of *possibilities*.

On the question of the character of proof required to support a finding of this kind, it is said in *San Francisco* v. *Industrial Acc. Com.*, 183 Cal. 273, at page 283 [191 P. 26]: "It, of course, cannot be said that from these facts it is certain Slattery contracted his sickness because of his employment. But certainty is not required. It is not even required that the award be in our judgment in accord with the preponderance of the evidence, in order that we be not at liberty to annul it. We cannot disturb the award unless we

can say that a reasonable man could not reach the conclusion which the commission did.''

The subject was fully reviewed in *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.*, 19 Cal.2d 622 [122 P.2d 570, 141 A.L.R. 798], and the statement set forth above again approved. The court further observed that each case necessarily depends upon its own facts and that no comprehensive formula is available; that the question is one of fact and all reasonable inferences are to be drawn in favor of the award. (See, also, *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 684 [252 P.2d 649]; *Maryland Casualty Co.* v. *Industrial Acc. Com.*, 64 Cal.App.2d 162 [148 P.2d 95].)

Directly in point is *Travelers Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 685 [203 P.2d 747], where the medical opinion was at times given in terms of possibilities but it was also stated that ''there is a probability that he was suffering from lead poisoning.'' It was there held that such evidence was sufficient. It must be so held in the instant case.

At the hearing petitioner set up the defense that the claim was barred by the statute of limitations. It was found, however, that petitioner was estopped to rely on it and it now argues that the evidence was insufficient to support that finding.

Section 5405 of the Labor Code provides that in cases of this kind proceedings for the collection of benefits must be commenced within one year from the injury. Section 5411 provides that ''The date of injury, except in cases of occupational disease, is that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed.''

Dr. Wallace fixed the date of the injury as March, 1950, and petitioner has based its arguments largely upon that date. Mrs. Moynahan fixed the date as March 13, 1951, and the commission so found. In view of our conclusion that the finding in that respect is sufficiently supported, we will accept the later date as correct in the consideration of the questions that follow. Mrs. Moynahan filed her application for adjustment of her claim September 24, 1953, or more than 18 months after the date fixed by her for the injury. Inasmuch as more than one year admittedly elapsed in any event, the exact date of the injury is unimportant except to the extent that it bears on the question of estoppel.

Petitioner does not deny the long delay in acting upon Mrs. Moynahan's request for consideration of her claim or

that she frequently and persistently inquired to find out what, if anything, was being done. It rests upon the proposition that there was no affirmative action of any kind on its part that could give rise to an estoppel.

It is conceded that neither the petitioner, its adjusters, nor the employer ever promised to pay the claim or to recognize its validity. Nor was any inducement offered for delay. The most that can be said is that Mrs. Moynahan was led to believe at all times if she would wait a little longer petitioner would give her another medical examination, conduct further investigations and then pass on the validity of her claim.

The rule as applied to cases of estoppel to plead the statute of limitations is stated as follows in *Carruth* v. *Fritch*, 36 Cal.2d 426, at page 433 [224 P.2d 702, 24 A.L.R.2d 1403]: "One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought." In that case plaintiff was assured that she would be compensated for medical expenses and loss of salary without litigation. A review of the authorities in this state and elsewhere indicates that in the vast majority of cases where estoppel was successfully invoked some such affirmative action was taken by the party who later sought to set up the bar of the statute and that it was a direct cause of the delay.

It is a general rule that a mere request for delay, in the absence of a promise or agreement not to plead the statute of limitations, does not estop one from asserting it. (130 A.L.R. 29; 24 A.L.R.2d 1426.) But when a debtor's conduct is such as to mislead his creditor, who acts thereon in good faith and fails to commence his action within the statutory period, the debtor is estopped to rely on the statute. And it is not necessary that there should have been an intent to mislead. (*Industrial Indem. Co.* v. *Industrial Acc. Com.*, *supra.*)

The case of *Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346 [159 P.2d 24], is similar in many respects to the present case. There, the claimant, who was a nurse, contracted tuberculosis while working in a hospital. Her husband wrote the superintendent of the hospital who replied "expressing a preference to settle the matter." In this connection he also stated that the hospital relied for advice upon the doctor who was the chief of its medical service and upon the insurance carrier.

On several occasions the superintendent asked for more time. At a still later date the representative of the insurance carrier, when contacted, also asked for more time to investigate the case. The commission made no finding on the issue of estoppel. However, the court said: "But the commission had a right to consider the evidence which was favorable to the petitioner on the issue of estoppel. In fact such evidence was without substantial conflict both as to the conduct of the hospital authorities and of the representatives of the insurance company." After reviewing the evidence, the court stated further: "It follows that the employer and its insurance carrier cannot escape the consequences of their acts or conduct affirmatively engaged to procure delay for purposes of settlement, or investigation, or otherwise."

Petitioner argues that the case is not authority for holding the evidence to be sufficient in this case; that it is distinguishable for the reason that the superintendent expressed a preference for settlement. If petitioner's argument is sound, the statement concerning "conduct affirmatively engaged to procure delay for purposes of settlement, *or investigation, or otherwise,*" is meaningless. (Italics added.) The expression of the superintendent clearly recognized the need for advice and investigation and the court clearly based its conclusions on the combined effect of all the acts and conduct of both the hospital authorities and the carrier.

Whether or not the Benner case is a controlling precedent, both the law and the facts of this case compel us to accept the conclusion of the commission on this question. ■ "Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention." (*Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309 [44 P.2d 547].)

■ Affirmative action does not consist always of promises of settlement or expressions of hope for amicable adjustment of claims. ■ When the debtor abandons his policy of silence and inaction, and by word and conduct does things reasonably calculated to lull his creditor into a sense of security and delay action beyond the statutory period, an estoppel to invoke the statute of limitations may arise, and this is not a question of law but one of fact. (*Industrial Indem. Co.* v. *Industrial Acc. Com., supra.*)

■ In this case the evidence shows clearly that the employer was actively engaged in an effort to have an investiga-

tion made by petitioner and that this was well known to petitioner; that petitioner repeatedly and over a long period of time, delayed action but promised that further medical examinations would be had; that these combined actions started before the statutory period had run and continued almost to the date of filing the application with the commission.

The question was for the commission, the evidence was sufficient, and the finding cannot be disturbed.

Petitioner makes the final point that the employer did not have sufficient notice of the injury and that Mrs. Moynahan was not, therefore, entitled to reimbursement for self-incurred medical expenses.

Section 4600 of the Labor Code places the responsibility for medical expenses upon the employer when he has knowledge of the injury. Such knowledge, if obtained from any source by the managing agent, is sufficient. (Lab. Code, § 5402.) ''In every case the employer should be given a fair opportunity to furnish to the employee the treatment required on account of the injury or to substitute his own treatment for that procured. Obviously, in order that he be given such an opportunity, the notice or knowledge of the injury must be such as to afford a reasonable notification of the need of medical treatment or claim thereto on account of the injury. . . . However, even though he first becomes aware of the necessity for treatment at the time the employee is being treated by a physician of his own choice, the employer is obliged then to tender treatment else he becomes liable for the value of services rendered thereafter.'' (*Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 70 Cal.App.2d 382 [161 P.2d 59].)

While the record does not give the details of the conversation, according to Mrs. Moynahan she discussed the accident with Mr. Trousdale in August and he expressed his regret. She did not ask for medical aid but made her own arrangement. In November, she remained away from work for the operation and Mr. Trousdale visited her at the hospital.

The duty imposed upon an employer who has notice of an injury to an employee is not, in the first instance, the passive one of reimbursement but the active one of offering aid in advance and of making whatever investigation is necessary to determine the extent of his obligation and the needs of the employee. (*Draney* v. *Industrial Acc. Com.*, 95 Cal. App.2d 64 [212 P.2d 49].)

The award for reimbursement covered bills that accrued as the result of the operation in November and after the discussion in August.  The evidence is sufficient to support the finding.

The award is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied February 1, 1954, and petitioner's application for a hearing by the Supreme Court was denied March 3, 1954.