[L. A. No. 28659. In Bank. Feb. 3, 1966.]

JANET McCOY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, LONGVIEW FIBER COMPANY et al., Respondents.

Byron R. Bentley for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Romaine E. Harper, Weingand, Kendig & Stockwell and Joseph J. Gleason for Respondents.

MOSK, J.—Petitioner, Janet McCoy, sustained an industrial injury to her back, neck, right hip, and right arm on June 8, 1962. Defendants, her employer and its insurance carrier, provided her with medical treatment after the accident but on November 8, 1963, they informed her that on the advice of a physician who had examined her a few days previously, no further medical treatment would be furnished.

Petitioner continued to complain of pain and other distress and in March 1964 she consulted a doctor of her own choosing, who diagnosed her condition as a possible ruptured disc. On March 16 he performed an operation which revealed his diagnosis to be correct, and he removed the disc. Prior to that date petitioner did not inform defendants of the diagnosis or of the imminent surgery. The commission refused to allow reimbursement for the cost of the surgery on the ground that defendants were not given reasonable notice and an opportunity to furnish treatment. Petitioner here seeks review of this determination, asserting that she is entitled to reimbursement under the provisions of section 4600 of the Labor Code.

Section 4600 provides in part: ''Medical, surgical, and hospital treatment . . . which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment.''

Petitioner is a 22-year-old assembler who was injured when a forklift struck her and propelled her into a baling frame and onto the floor. She received physiotherapy, traction, and other treatment from doctors provided by defendants, from the time of her injury in June 1962 until early 1963. In January 1963 she filed an application with the commission to determine *inter alia* defendants' liability for further medical treatment. Doctors provided by the employer, as well as an independent physician provided by the commission, examined her in the following months and reported that there was no evidence of fracture of the vertebrae and that she was not in need of further medical treatment. In July the commission found that further treatment was not required.

Petitioner continued to complain of pain, and her attorney wrote the carrier on October 11, 1963, that her condition had worsened, that she was in need of immediate medical attention, and that defendants should provide such attention ''so that it will not be necessary for her to obtain self-procured medical treatment.'' Thereafter, she was examined by two of the doctors who had previously seen her and both were of the opinion that further treatment was unnecessary. On November 8 the carrier wrote petitioner's attorney that in view of the medical findings ''we decline to provide the applicant with any medical treatment.''

Petitioner's attorney wrote the commission in December requesting a hearing, which was set for February 19, 1964. No evidence was taken at this hearing because both parties sought time for further medical investigation. Petitioner then called her family doctor, who referred her to a Dr. Amyes, and on February 20 her attorney wrote defendants asking them to send him the report of an electromyelogram of petitioner which had been taken by their doctor "as she is to be seen by a neurosurgeon in the near future."

Dr. Amyes agreed to accept petitioner as a patient only if she would submit to surgery in the event his opinion indicated this to be necessary and petitioner agreed to this arrangement. She was examined by Dr. Amyes on March 3; he diagnosed her condition as a possible ruptured disc between the fifth and sixth cervical vertebrae, and recommended that she be admitted to the hospital for tests. These tests proved negative with the exception of a discogram, which indicated a rupture between the fifth and sixth cervical vertebrae. There was a dispute in subsequent proceedings as to whether a discogram is a reliable basis for diagnosing ruptured discs and the referee found, in effect, that the discogram results did not justify surgery. Nevertheless, the operation corroborated Dr. Amyes' diagnosis, and on March 16 he removed the ruptured disc and performed a cervical fusion.

On March 10, while petitioner was undergoing tests in the hospital under the supervision of Dr. Amyes, defendants wrote advising her that they had arranged for her to be examined by another doctor on March 20.

The commission refused to award petitioner the cost of self-procured treatment and a petition for reconsideration was filed. The referee's report relates that there was a "complete paucity" of medical evidence to justify any treatment, including surgery, until after surgery was an accomplished fact, that there was no notice to defendants that petitioner intended to undergo surgery or had agreed with Dr. Amyes that she would do so if in his opinion this was necessary, and that her condition showed some improvement after surgery. The commission denied reimbursement on the ground that defendants were given neither reasonable notice nor a reasonable opportunity to furnish surgery.

Petitioner argues that the findings of the commission are not supported by substantial evidence and that defendants

had ample notice that further care was required but refused to provide treatment.

The commission contends, on the other hand, that the only situation in which an employee is excused from giving his employer notice of the need for medical care and affording the employer an opportunity to provide it is where an emergency requires the employee to obtain immediate treatment (e.g., *Grappo* v. *San Francisco Examiner* (1946) 11 Cal. Comp. Cases 233), or where a request for treatment to the employer would be futile (*Industrial Indem. Co.* v. *Industrial Acc. Com.* (1961) 188 Cal.App.2d 656, 660 [10 Cal.Rptr. 566]; *California Union Ins. Co.* v. *Industrial Acc. Com.* (1960) 183 Cal.App.2d 644, 647-648 [7 Cal.Rptr. 67]) and that such circumstances do not exist in the present case.

We hold the denial of reimbursement cannot be upheld even if it be assumed arguendo that there is substantial evidence to support the implied findings of the commission that the foregoing circumstances do not exist. Under the facts of the present case, the refusal of defendants to render further treatment justified petitioner in seeking the care of her own doctor, and since it is undisputed that such care was "reasonably required to cure or relieve from the effects of the injury," she is entitled to reimbursement. We cannot accept the commission's contention that petitioner was required to inform defendants of Dr. Amyes' diagnosis and afford them an additional opportunity to render treatment before she submitted to the operation.

It is important to note at the outset that we are not here concerned with the scope of the employer's responsibility to furnish medical attention to an employee who suffers an industrial injury. The employer, whether providing the treatment himself or reimbursing the employee for self-procured care, is required by section 4600 to pay only the cost of such care as is reasonably required to cure or relieve. The aspect of the statute with which we deal is the extent of the employer's privilege to control the course of the injured employee's medical care.

The Legislature intended that section 4600 shall be liberally interpreted in favor of the employee's right to obtain reimbursement, and it has been held that the employer should not, without good cause, be relieved of the duty to furnish medical care. (*California Union Ins. Co.* v. *Industrial Acc. Com.* (1960) *supra,* 183 Cal.App.2d 644, 648;

*Simien* v. *Industrial Acc. Com.* (1956) 138 Cal.App.2d 397, 400 [291 P.2d 951].) The duty of the employer to furnish treatment in the first instance has been viewed strictly. ██ It is settled that the employee is entitled to reimbursement for self-procured care when the employer has notice of the injury but fails to tender treatment promptly, and in such a case the employee is not required to request his employer for medical attention. (*Leadbettor* v. *Industrial Acc. Com.* (1918) 179 Cal. 468, 471 [177 P. 449]; *United States Cas. Co.* v. *Industrial Acc. Com.* (1954) 122 Cal.App. 2d 427, 435 [265 P.2d 35]; *Bethlehem Steel Co.* v. *Industrial Acc. Com.* (1945) 70 Cal.App.2d 382, 389-390 [161 P.2d 59]; *Railway Express Agency, Inc.* v. *Industrial Acc. Com.* (1959) 24 Cal. Comp. Cases 294; *Peter Kiewit Sons' Co.* v. *Industrial Acc. Com.* (1948) 13 Cal. Comp. Cases 131; *Stake* v. *Gurr* (1933) 19 I.A.C. 45.) The rationale of these cases is that notice of injury provides the employer with the opportunity to render medical assistance and if he fails to avail himself of the opportunity promptly, he has neglected to provide treatment within the meaning of section 4600.

Even if the employer has assumed his responsibility to undertake treatment, various circumstances have been held to justify the employee in thereafter obtaining care from his own doctor at the employer's expense. Many decisions have awarded an employee reimbursement for self-procured treatment when the employer has either refused to render further treatment on the advice of his doctors that it was unnecessary or the care supplied by the employer proved ineffective, and the employee's own doctor afforded such treatment as was reasonably required to cure or relieve him. (*Union Iron Works* v. *Industrial Acc. Com.* (1922) 190 Cal. 33 [210 P. 410]; *County of Los Angeles* v. *Industrial Acc. Com.* (1936) 13 Cal.App.2d 69 [56 P.2d 577]; *Godeau* v. *Industrial Acc. Com.* (1926) 76 Cal.App. 333 [244 P. 625]; *Wilson* v. *Spicky Polish Corp.* (1932) 18 I.A.C. 6; *Broderick* v. *Pericic* (1924) 11 I.A.C. 84; *Earl* v. *Northern Redwood Lumber Co.* (1923) 10 I.A.C. 97; *Risso* v. *Pacific Rolling Mills Co.* (1923) 10 I.A.C. 2; *Miller* v. *Aetna Springs Co.* (1915) 2 I.A.C. 534.)

Emanating from the foregoing cases is the rule that the employer is required to provide treatment which is reasonably necessary to cure or relieve the employee's distress, and if he neglects or refuses to do so, he must reimburse the employee for his expenses in obtaining such treatment. None of the cited cases involved an emergency or a finding that a

further request for care would have been futile. Moreover, none required the employee, after the employer's initial neglect or refusal, to afford him an additional opportunity to render treatment on the basis of subsequent recommendations made by the employee's own doctor, although a few of the cases on their facts involved a situation in which the employer knew, before his default, that the employee's own physician recommended certain treatment (e.g., *Union Iron Works* v. *Industrial Acc. Com.* (1922) *supra*, 190 Cal.33).

One recent decision of the commission merits attention. In *Fireman's Fund Indemnity Co.* v. *Industrial Acc. Com.* (1960) 25 Cal. Comp. Cases 79, the doctors employed by the carrier discharged the employee from treatment, stating that any remaining symptoms were functional. Thereafter, the employee consulted his own physician, who recommended surgery. The employer filed a petition to terminate liability, unaware that the employee's physician had recommended surgery. Although the employee did not contact it, the carrier learned of the scheduled surgery and wired the employee three days before the operation, instructing him to report to a doctor selected by the carrier and stating that if this doctor recommended surgery it would be performed immediately but that the carrier would not be responsible for any self-procured treatment. The employee proceeded with the operation by his own doctor, and his condition was improved as a result. The commission awarded reimbursement in a decision which suggests the appropriate interpretation of the existing law:

" 'Under the foregoing circumstances, it is the opinion of the Commission that the defendants failed to provide necessary treatment; that its physician misdiagnosed applicant's need for surgery and, in fact, he discounted applicant's complaints as exaggerated. Section 4600 of the Labor Code sets forth the primary duty of the employer or his insurance carrier to provide necessary treatment seasonably. The Appellate Courts in construing this provision have held that it is not necessary that an employee ask for treatment specifically if the facts of injury are made known to the employer or if the employer incorrectly terminates treatment. Under such circumstances it is not necessary that the employee give notice to the employer that he is about to obtain self-procured medical treatment. The liability of the employer for reimbursement for self-procured medical treatment arises when the employer fails to meet his duty. A mere passive

willingness on the part of an employer to give necessary medical aid does not constitute the offering of treatment.' '' (*Id.* at p. 80.)

If an employer has refused an injured employee treatment for an industrial injury or claims that further care is unnecessary or futile, it is liable for the reasonable cost of medical care secured by the employee from a physician of his own choosing if such treatment is given within a reasonable time after the employer's refusal, if there has been no substantial change in the employee's condition before independent medical advice is rendered and if, at the time reimbursement is sought, the employee can show that the treatment he received was ''reasonably required to cure or relieve from the effects of the injury.''

This rule is reasonable for both the employer and the employee and is consistent with the intent of section 4600. When the employer has been given the opportunity to render treatment, the mandate of section 4600 according him the right to control the employee's medical care has been satis-██ ██ While it may be difficult to determine factually in a particular case whether the employee was justified in seeking independent advice on the basis of the employer's *failure* to provide treatment reasonably necessary to cure or relieve, the problem is presented in a different context where, as here, the employer *refuses* to render further care. Under these circumstances, he has voluntarily terminated his right to control the course of medical treatment. ██ In order to assure that he has had a meaningful opportunity to exercise that right, it is appropriate to require that there be no substantial change in the employee's condition between the time of the refusal and the treatment by the employee's own doctor and that such treatment occur within a reasonable time after the refusal. ██ And we emphasize also that, whether the treatment is administered by a doctor chosen by the employee or one selected by the employer, the latter is liable for no more than the reasonable cost of such treatment as is reasonably required to cure or relieve from the effects of the injury.

An employee who claims to be in need of further medical care would be placed at a serious disadvantage if he were compelled, as a condition of reimbursement, to renew his demand for treatment after the employer's initial refusal. While it is true that the employer then may comply with his request, the dilatory process of an additional request and

submission to further examination by the employer's doctors could result in delaying necessary medical care.[1] In some cases, such as the present one, it might be impossible to establish until after surgery is completed that it was reasonably required, and the employee would then be required to obtain the treatment from his own doctor, apprehensively hoping that his claim for reimbursement could be proved by a successful result. Moreover, an employee's choice of doctors would be circumscribed since his physician might, like Dr. Amyes here, refuse to accept the employee as a patient unless he promises to submit to any treatment recommended. There is no reason to believe the Legislature intended section 4600 to be interpreted in a manner to impose such a burden on an injured employee.

 This petitioner is clearly entitled to reimbursement under the principles discussed above. The defendants notified her in November 1963 that they would render no further medical care. She submitted to surgery by her own physician in March 1964, and no substantial change in her condition occurred in the interval between those dates. It is undisputed that the operation resulted in relieving her from the effects of the injury. There is no finding, however, that the charges for her self-procured care are reasonable and thus it is necessary to return the matter to the commission for a determination of this question.

As indicated above, we are unimpressed by the commission's contention that defendants did not improperly refuse to provide medical treatment because they had not been apprised by any doctor before the operation that further medical care was required and petitioner's request for treatment, unsupported by any medical opinion that further treatment was reasonably necessary, did not constitute a reasonable demand. As was said in an early decision of the commission, "While the insurance carrier was justified in following the advice of its medical representative, that justification does not absolve it from the consequences of a mistaken diagnosis and consequent inadequate treatment. The rights of the injured employee under the act are not subject to nullification by reason of the mistakes of physicians whom employers or their insurance carriers designate to treat them." (*Johnson* v. *Pacific Surety Co.* (1914) 1 I.A.C., pt. II, 560, 561.)

---

[1]For a tangential phase of the problem under federal law, see the recent case of *Gunther* v. *San Diego & Arizona Eastern Railway Co.* (1965) 382 U.S. 257 [86 S.Ct. 368, 15 L.Ed.2d 308].

*Pacific Indem. Co.* v. *Industrial Acc. Com.* (1963) 220 Cal. App.2d 327 [33 Cal.Rptr. 649], and *Cuevas* v. *Industrial Acc. Com.* (1965) 30 Cal. Comp. Cases 125, are distinguishable. In one the employer did not refuse to render further treatment, and in the other it was held that there was no justification for a finding that the employer had neglected to furnish proper treatment.

An analogy to the situation involved here is suggested in cases in which the employer refuses or neglects to provide medical treatment for an injury on the mistaken assumption that it is not industrial in origin. If it is later discovered that the injury arose out of and in the course of employment, the employer must reimburse the employee for his self-procured medical expenses, despite the fact that his original failure to render treatment was based on a good faith mistake as to the nature of the injury. (E.g., *Foremost Dairies, Inc.* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 560 [47 Cal.Rptr. 173].)

■ There is an additional contention of petitioner which requires our attention. She claims the commission erred in refusing to award her temporary disability from January 1963 until March 1964 when she consulted Dr. Amyes, except for five months of that period when her disability was due to her pregnancy and the birth of her child.

In July 1963 the commission found that petitioner had been temporarily disabled from the time of her injury in June 1962 until January 1963, but that she was not temporarily disabled thereafter. This finding was based on the same medical reports filed in early 1963 which failed to discover the ruptured disc. Petitioner was pregnant in 1963, and clearly some period of disability in that year was due to her pregnancy.

After the operation, she sought to reopen the issue of temporary disability. The commission awarded her additional temporary disability from March 1964 until October 1964, apparently on the basis of the temporarily incapacitating effects of the operation which had been performed in March. She was also awarded permanent disability of 31½ percent as of October 15, 1964, when her condition was deemed to be permanent and stationary.

Temporary disability was not allowed, however, for any period between January 1963 and March 1964. It is difficult to rationalize the commission's refusal to award disability

for the portion of this period when her disability was not caused by pregnancy. It appears to be claimed that since the doctors who examined petitioner in the spring of 1963 were of the opinion that she was not disabled, the commission was justified in accepting their opinions in spite of the fact that it was subsequently demonstrated without dispute that they had erred in diagnosing her condition and that she was in fact suffering from a ruptured disc. Petitioner insisted that she could not work during this period because of pain, and the operation resulted in improving her condition.

The commission was not entitled to rely on medical reports which it learned were erroneous in denying the claim for disability. Thus the commission should have awarded petitioner temporary disability from January 1963 until March 1964, except for that portion of the period when her disability was due to factors other than the results of the injury.

The award of the commission is affirmed as to the allowances made to petitioner. The cause is returned to the commission with instructions to award reimbursement for the reasonable cost of the self-procured medical care and temporary disability for that portion of the period between January 1963 and March 1964 when petitioner was disabled by the injury.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.