[S.F. No. 23040. In Bank. Jan. 2, 1974.]

MERCEDES T. VOSS, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
CASTLE & COOK et al., Respondents.

584

**COUNSEL**

Davis, Cowell & Bowe, John H. Cohenour and Alan C. Davis for Petitioner.

Goshkin, Pollatsek & Meredith and Jack A. Pollatsek for Respondents.

**OPINION**

**SULLIVAN, J.**—In *Zeeb* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal. 2d 496, 502 [62 Cal.Rptr. 753, 432 P.2d 361], we held that once an employee has properly procured his own medical treatment and established a doctor-patient relationship with a doctor of his own choice "treatment should continue with the same doctor in the absence of a change of condition or evidence that the treatment is defective or additional treatment is necessary." In the instant case we are called upon to determine whether respondent Workmen's Compensation Appeals Board (Board) acted in excess of its jurisdiction in authorizing the employer's compensation insurance carrier to resume control of the medical treatment of the employee on the basis of a change in the employee's condition.

On November 6, 1969, petitioner Mercedes Voss, while employed as a clerk-cashier for Castle & Cook, doing business as Ames Mercantile and U.S.E., sustained an industrial injury to her back. The next day, she commenced medical treatment with Dr. Donald Trauner, who was furnished by Hartford Accident and Indemnity Company, the employer's work-

men's compensation insurance carrier. When petitioner became dissatisfied with the treatment afforded by Dr. Trauner, she was referred by the carrier to Dr. Marvin Gordon.

Dr. Gordon treated petitioner from November 25, 1969 until May 22, 1970 when he concluded that she no longer required medical treatment. In September 1970, petitioner consulted Dr. Reuben Wekselman, a private doctor, who recommended further treatment. In November 1970, she returned to Dr. Gordon who, after reexamining her, concluded that her condition was unchanged and had become stabilized, and that she still required no further treatment. Petitioner therefore returned to Dr. Wekselman and has remained under his care.

In the meantime, on May 12, 1970, petitioner had filed with respondent Board an application for adjustment of claim. On March 14, 1972, a referee issued findings and award, allowing petitioner temporary disability indemnity, finding that her condition was not yet permanent and stationary. Finding additionally that petitioner had reasonably incurred expense for self-procured medical treatment with Dr. Wekselman, which the employer and its carrier had failed to provide, the referee awarded her reimbursement for this treatment and for "such further medical treatment as is reasonably required to cure or relieve from the effects of the injury herein."

Petitioner continued treatment with Dr. Wekselman, who in April of 1972 recommended that she be rehospitalized for a second myelogram to determine if surgery were necessary. On April 4, 1972, the carrier informed petitioner in writing that although she was entitled to further medical treatment, "we maintain this is still the right of the Carrier to control and do now advise you . . . you are to return to Dr. Marvin Gordon . . . . [¶] He alone will be authorized to provide you with medical treatment. . . . Dr. Gordon is extended the authorization to carry out the hospitalization, myelography, and, if indicated, necessary surgery." On April 27, 1972, the carrier informed Dr. Wekselman that Dr. Gordon was the only authorized treating physician. Nevertheless, electing to remain under the care of Dr. Wekselman, petitioner was hospitalized in April 1972 and had a myelogram taken.

The carrier thereupon requested a hearing before the Board to determine: (1) petitioner's right to reimbursement for self-procured medical treatment with Dr. Wekselman subsequent to the findings and award of March 14, 1972; and (2) the carrier's right to control the medical treatment.

On August 29, 1972, the referee issued supplemental findings and award for reimbursement to petitioner of the additional self-procured

medical treatment with Dr. Wekselman, observing: "Considering the confusion which has existed regarding medical treatment . . . it cannot be said that treatment received was unreasonable." However, the referee also determined that the carrier would thereafter have authority to control medical treatment, stating: "The Referee in the instant case finds it difficult to deprive the defendant [of] control of medical treatment because of the applicant's apparent propensity to demand excessive medical attention."

Petitioner sought reconsideration of the reinstatement of control of medical treatment in the carrier on the ground that *Zeeb* v. *Workmen's Comp. App. Bd., supra,* 67 Cal.2d 496, demanded a contrary result. The Board denied reconsideration relying upon the referee's conclusion that petitioner's apparent propensity to demand excessive medical attention was a "change of circumstances" which justified restoring control over medical treatment to the carrier. We issued a writ of review.

Petitioner's sole contention before us is that the Board acted without and in excess of its powers (see Lab. Code, § 5952) in restoring to the carrier the right to control her medical treatment. She asserts that, according to the rule set forth in *Zeeb,* once the carrier has lost the right to control medical treatment and the employee has established a doctor-patient relationship with a doctor of his or her choice, "treatment should be continued with the same doctor in the absence of a change in her physical condition." In response, the carrier contends first that it never lost its right to medical control; and, secondly, that even assuming it did lose control, there was a sufficient change in circumstances to justify restoring control to the carrier.

Initially we address ourselves to the question whether the carrier ever lost its right to medical control.[1] Labor Code section 4600 provides in pertinent part: "Medical, surgical, and hospital treatment . . . which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

It has been held that this statute not only provides for payment by the employer of the reasonable cost of curing the employee, but also confers

---

[1] "When the insurance carrier assumes liability, it is subrogated to all the employer's rights, including control over treatment." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (1973 ed.) § 16.04[2][b], pp. 16-33—16-34.) Since the carrier had assumed liability in the case at bench, it had the right to control medical treatment.

upon the employer the right to control the course of the injured employee's medical care. (*Zeeb* v. *Workmen's Comp. App. Bd., supra,* 67 Cal.2d 496, 501; *McCoy* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 82, 86 [48 Cal.Rptr. 858, 410 P.2d 362].) "Obviously, it will ordinarily be in the interests of both the employer and the employee ·to secure adequate medical treatment so that the employee may recover from his injury and return to work as soon as possible. Permitting the employer to control the medical treatment permits the employer, who has the burden to provide the medical treatment, to minimize the danger of unnecessary and extravagant treatment, and in the light of the employer's interest in speedy recovery, the employer's control should rarely result in a denial of necessary treatment. Thus, the two purposes underlying section 4600 of the Labor Code, effective treatment and minimization of expense, will ordinarily be served where the employer is permitted control of the medical treatment." (*Zeeb* v. *Workmen's Comp. App. Bd., supra,* 67 Cal.2d at p. 501.)

■ However, the employer may lose his right to control medical treatment if he fails or refuses to provide it. In that event the employee is entitled to procure treatment for himself with a doctor of his choice and is entitled to reimbursement for his expenses. (*McCoy* v. *Industrial Acc. Com., supra,* 64 Cal.2d 82, 86.) In *McCoy* we held that where an employer, albeit in good faith reliance upon the opinion of its own doctor that further treatment is unnecessary, refuses to provide it "he has voluntarily terminated his right to control. the course of medical treatment." (*Id.* at p. 89.)

In the case at bench Dr. Gordon determined that further treatment was unnecessary and refused to furnish it. The referee, in the findings and award of March 14, 1972, found that petitioner had reasonably incurred expenses for self-procured medical treatment with Dr. Wekselman, and that the employer and carrier had failed to provide the necessary treatment. In short, it appears that the carrier failed to provide the necessary medical treatment by insisting .that petitioner be treated by a doctor who refused further treatment as unnecessary and that the carrier thereby lost the right to control medical treatment.[2]

The carrier contends, however, that it did not lose control because it did not refuse further medical treatment, but rather continued to proffer the services of Dr. Gordon. In urging this position the carrier conveniently

---

[2]"[T]he doctor's dismissal of a patient as cured may be held a neglect to furnish treatment if the employee in fact needed additional care and secured it elsewhere." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 16.04[2][c], p. 16-34, fn. omitted.)

overlooks the fact that Dr. Gordon insisted there was no need for further treatment. ▮ A carrier may lose control over medical treament by continually referring the injured employee for treatment to doctors who indicate that no treatment is necessary since such action on its part is tantamount to a denial of medical treatment. (*Betancourt* v. *Workmen's Comp. App. Bd.* (1971) 16 Cal.App.3d 408, 412 [94 Cal.Rptr. 9].) We therefore hold that under the particular circumstances of the instant case, the carrier had lost control of the course of medical treatment a substantial time prior to the referee's findings and award on March 14, 1972.

We made clear in *Zeeb* that where the employer has once lost his right to control medical treatment for the employee, he can regain it without the employee's consent only in limited situations. We there said: "Where, as in the present case, the employer has refused treatment causing the employee to procure his own medical treatment, medical considerations and adherence to the purposes of section 4600 would dictate that a doctor-patient relationship which will inspire confidence in the patient is an ingredient aiding in the success of the treatment, and that, once such a relationship has been established, treatment should continue with the same doctor *in the absence of a change of condition or evidence that the treatment is defective or additional treatment is necessary."* (*Zeeb* v. *Workmen's Comp. App. Bd., supra,* 67 Cal.2d at p. 502; italics added.)

The referee, in responding to the petition for reconsideration, determined that petitioner's apparent propensity to demand excessive medical attention was a "change of circumstances . . . and justifies the order which establishes control of medical treatment in the defendant." ▮ As the petition for reconsideration was based on *Zeeb,* it appears that the referee considered a new or changed propensity to demand excessive medical attention a "change of condition" within the meaning of *Zeeb* which would justify reinstatement of medical control in the carrier. We disagree.

In the supplemental findings and award of August 29, 1972, the referee awarded petitioner reimbursement for her self-procured medical expenses, finding that the treatment received was reasonable. Thus, regardless of what treatment petitioner may have demanded, all treatment she had theretofore received was found to have been reasonable. In view of this finding, it is difficult to perceive how the carrier has been or could be injured by continuing petitioner's relationship with Dr. Wekselman.

But assuming arguendo some risk of injury in the future, it would appear to be purely economic in nature. While in *Zeeb* we recognized that "minimiz[ation] [of] the danger of unnecessary and extravagant treatment"

was one of the purposes underlying conferral upon the carrier by Labor Code section 4600 of the right to control medical treatment, we also concluded that "where there is a conflict between the two purposes, the purpose of securing proper medical care and speedy recovery must take precedence over the goal of minimization of cost." (*Zeeb* v. *Workmen's Comp. App. Bd., supra,* 67 Cal.2d at p. 501.) Because the continuance of the doctor-patient relationship is "an ingredient aiding in the success of the treatment" (*id.*), it must take precedence over any consideration of minimization of cost which would require the cessation of this relationship.

■ Therefore, it is clear that a change in the circumstances concerning cost of treatment is not the kind of "change of condition" which would justify restoring control over medical treatment to the carrier. It would appear that "change of condition" refers to a change in the physical condition of the employee. ■ In the typical case the carrier loses the right to control medical treatment by refusing further treatment because the carrier deems such treatment unnecessary, when in fact the employee's condition requires it. Once the employee has satisfactorily obtained adequate treatment for this condition, he is entitled to have that treatment continued, subject to the limitation that only reasonable expenses will be reimbursed.

However, if the employee's physical condition changes so that the condition which prompted the carrier to deny further treatment is not the employee's existing condition, it would seem proper for the carrier to resume control of the treatment of the condition as changed.

In the case at bench the carrier contends that the hospitalization ordered by Dr. Wekselman in April 1972 and the diagnostic testing undergone at that time indicate that there was a change in petitioner's physical condition which would justify resumption of medical control by the carrier. The referee, however, made no such finding. Rather the only changed circumstance found by the referee was a propensity on petitioner's part to demand excessive treatment. Moreover, it is apparent from the record that rehospitalization and a myelogram were recommended for petitioner not because of any change in her condition but rather because Dr. Wekselman hoped that these tests would reveal new and more successful avenues of treatment for the same continuing condition.

We conclude that since petitioner properly secured her own medical treatment and developed a successful doctor-patient relationship with her own doctor, she was entitled to continue such relationship, as there was no change in her condition, or defect in Dr. Wekselman's treatment, which would allow the carrier to resume control of the treatment. We

therefore hold that the Board exceeded its jurisdiction in ordering that control of petitioner's medical treatment be restored to the carrier.

The supplemental award insofar as it directs that "defendant carrier henceforth has authority to control medical treatment" is annulled. The cause is remanded to the Board with directions to proceed in accordance with the views expressed in this opinion.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Clark, J., concurred.