[Civ. No. 30360. Second Dist., Div. Four. Sept. 15, 1966.]

LILLIE M. BOYLES, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and TRUCK INSURANCE EXCHANGE, Respondents.

822

Levy, LeRoy, Geffner & Van Bourg and Mervin N. Glow for Petitioner.

Everett A. Corten, Edward A. Sarkisian, McCarthy & Pollock and J. Thomas McCarthy for Respondents.

KINGSLEY, J.—Lillie M. Boyles petitions for review of that portion of a workmen's compensation award which denied to her reimbursement for expense of self-procured medical treatment and attendant transportation.

Petitioner, a cook by occupation, sustained an industrial injury to her neck and back as a result of a fall on March 15, 1965. Respondent, the employer's insurer, assumed liability and provided medical treatment and weekly temporary disability compensation. A physician for respondent, upon examination of petitioner on June 23, 1965, advised petitioner he was "releasing" her to return to work as of June 28, 1965, and he "would see her in two weeks." Petitioner did not return to work. She did not return to respondent's physician but consulted a physician of her own choice.

Respondent insurer terminated the payment of weekly disability benefits after June 27, 1965. On July 9, 1965, petitioner filed application for continuing benefits. After hearing of the cause, the referee found, among other things, that the injury caused continuing total temporary disability through November 2, 1965, and thereafter; that medical treatment was required to cure or relieve from the effects of the injury; that respondent insurer failed to furnish medical treatment to cure or relieve from the effects of the injury after notice of need; that petitioner incurred reasonable expense therefor; and that petitioner incurred reasonable and necessary transportation expense in obtaining medical treatment. Award issued in accordance therewith, directing that the amount of reimbursement be adjusted between the parties or, in the event they failed to agree, upon a subsequent petition for determination of the amount.

Respondent petitioned for reconsideration upon the sole ground that the evidence did not justify the finding of liability for self-procured medical treatment. It did not seek reconsideration of the referee's finding that the injury had, in fact, caused total temporary disability through November 2, 1965. The Industrial Accident Commission, upon the limited reconsideration thus sought, annulled the award for reimbursement of self-procured medical treatment and transportation expense incurred in connection with the self-procured treatment and struck the findings relating thereto. A subsequent petition for reconsideration filed by petitioner was denied by the Workmen's Compensation Appeals Board.[1]

The appeals board decision is based on its findings that respondent's physician did not neglect or refuse to provide treatment and that petitioner went to a doctor of her own choice because of a personality conflict with the respondent's doctor.

Petitioner contends that, in view of the uncontested finding that she was continuously totally disabled through November 2, 1965, and thereafter, the doctor's opinion and advice that she was able to return to work was erroneous and justified her seeking treatment from a doctor of her own choice. She asserts there was no evidence of a personality conflict with the doctor other than evidence of her admitted dissatisfaction with his erroneous opinion and advice. The appeals board, on the other hand, contends there was no showing that the treatment fur-

[1]On January 15, 1966, the Workmen's Compensation Appeals Board replaced the Industrial Accident Commission.

nished to petitioner was inadequate in any respect or that treatment was abandoned. It argues that petitioner went to her own physician from choice.

The evidence presented on the issue appears as follows: Medical reports reflect that, after the accident, petitioner was hospitalized for five days, for several weeks she was treated by one doctor, and thereafter she was referred by respondent to Dr. Owens, who began treating her on April 21, 1965.

Petitioner testified: Dr. Owens ''released'' her to return to work when he examined her on June 23, 1965; she felt unable to return to work because of continuing pain and told him that she didn't feel able to work; he told her that he would see her in two weeks; he didn't offer any further treatment or tell her to return for any further treatment; she didn't return because he told her that she was trying to be nasty or smart when she told him she was unable to work; she went to another doctor 10 days later when she ran out of pills; this doctor gave her medication and a shot; he treated her five or seven times; his treatments helped relieve the pain; she stopped going to him because she was unable to pay him; she went to a second doctor; he treated her without payment; she didn't directly request a change of doctors from the insurance company; she was also referred by her attorney to another doctor who examined her, took X-rays, and who has not been paid.

Reports of Dr. Owens state that petitioner had made a prior unsuccessful attempt to return to work on May 16, 1965; that in the doctor's opinion a portion of her discomfort was attributable to osteoporosis for which she would be advised that she should purchase a prescription for treatment or that she should secure treatment from her private physician; and that petitioner contacted his office on June 15, 1965, and indicated that the medication she had been receiving did not help her appreciably. The report of his examination of June 23, 1965, states in pertinent part: ''When examined in this office, the patient was given a return to work date of June 28, 1965. This apparently did not please the patient, the patient indicating that she would not be back, that she was not able to return to work. This examiner is of the opinion that the patient is well able to work, and is actually experiencing very little difficulty referable either to her low back region or to her neck region. In the opinion of this examiner, no permanent physical disability will ensue as a result of the injury sustained by the patient. No further appointments were made for the patient to be examined in this office.''

The record before the appeals board, and before us, relating to the matter now in issue, is not as complete as could be desired. The petitioner had testified in person before the referee, but we have only the referee's summation of that testimony, on which she does not appear to have been cross-examined. Dr. Owens' version appears only from his formal written report; he was not summoned for oral testimony nor, of course, was he cross-examined. The burden was on petitioner to show not only the need for continued medical treatment, but also those facts which entitled her to reimbursement for self-procured medical treatment. (Cal. Workmen's Compensation Practice, Cal. Practice Handbook No. 18, §§ 9.39, 9.67.) And the findings of the board are binding on us if supported by adequate evidence—which may include a finding based on a failure of proof by the petitioner.

 In the light of these rules we conclude that, assuming that the variances between petitioner's and Dr. Owens' versions of the final interview between them amount to a conflict in the testimony, the board was within its proper function in resolving the issues against petitioner.

While the board might well have agreed with its referee and found that petitioner was justified in believing that she would receive no further help from Dr. Owens, that is by no means the only possible deduction to be made from the record. Once before, she had been advised to return to work, the pain had continued, she had returned to the doctor and been given further treatment. The current treatment was medication, of which she had a 10 days' supply. The doctor did not tell her she was discharged, but rather that he would see her in two weeks. On this record, the board could well conclude, as it did, that petitioner's obligation was to make a second honest attempt to work, and to seek a new appointment with Dr. Owens if the attempt were again unsuccessful.[2]

This is not a case, such as *McCoy* v. *Industrial Acc. Com.* (1966) 64 Cal.2d 82 [48 Cal.Rptr. 858, 410 P.2d 362], or *Foremost Dairies, Inc.* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 560 [47 Cal.Rptr. 173], wherein the employer had expressly refused to provide further treatment which subsequent events proved was actually required of an employer

---

[2]True, no fixed appointment for seeing the doctor was made; if his opinion was correct and return to work was successful, none was needed. And the suggestion to see him in ''two weeks'' did not necessarily imply that she would not be seen earlier if an appointment was sought.

under section 4600 of the Labor Code. As we have seen, the board was entitled to determine that the petitioner had never refused to continue treatment.

To annul the award here would do violence to the legislative policy. ■ The possibility of disagreement between an injured workman and the physician furnished by his employer is an obvious fact of life. To meet it, the Legislature has provided, in section 4601 of the Labor Code, a procedure whereby the dissatisfied workman may secure, at his employer's expense, a different physician with whom he may have a greater accord. Conceding that there might be a case where the need for medical services was so emergent that the statutory procedure could not reasonably be invoked, no such case appears here.

The award is affirmed.

Files, P. J., and Chantry, J. pro tem.,* concurred.

*Assigned by the Chairman of the Judicial Council.