JOHN BENSON, PETITIONER-APPELLANT, v.
COCA COLA COMPANY, RESPONDENT-RESPONDENT.

Hudson County Court
Law Division

Decided July 29, 1971.

*Mr. Lewis J. Weinstein* attorney for petitioner.

*Mr. Andrew Lawrie* for respondent (*Messrs. Lawrie & Jennings,* attorneys).

Cozzi, J. C. C. This is an appeal by petitioner John Benson from that portion of a judgment of the Compensation Division finding that medical treatment rendered to him by Dr. M. W. Weinstein and by the Irvington General Hospital was unauthorized medical treatment under *N. J. S. A.* 34:15–15 and denying his claim for reimbursement from respondent employer for the expenses resulting from that unauthorized treatment.

In his claim petitioner alleges that "he fell from tank truck" and injured his "neck, head, back and nervous system"; that medical aid was required and his employer failed

to furnish it when requested to do so, and that respondent "failed to furnish to the injured workman such medical * * * treatment and hospital service as shall be necessary to cure and relieve the workman of the effects of the injury and to restore the function of the injured member or organ where such restoration is possible * * *," *N. J. S. A.* 34:15-15.

It is admitted that on July 24, 1969 petitioner suffered a compensable injury when he fell from the side of a tank truck he was unloading and struck the ground some five to six feet below, his head, shoulder and back striking the ground first. He was not unconscious and got up without assistance and reported the accident to his supervisor, made out an accident report, and thereafter was driven by his foreman to the Cahill Clinic for medical treatment.

Petitioner testified that when he arrived at the clinic, his complaints were as follows: "I had a terrible pain in my neck, my head and my upperback * * * my head was leaning to the left of my shoulder. I couldn't straighten it out. I couldn't even my body out."

At the clinic Dr. Daniel DeLuca, the treating physician, made a physical examination and took X-rays of petitioner's head, neck and back. The X-rays proved to be negative for fracture and dislocation. He "found [petitioner] to be suffering contusions-muscle spasm of the left cervical region and contusion of the left shoulder girdle." He testified that a man with this condition would usually be treated with diathermy, heat treatment, muscle relaxants and pain killers. He was prepared at the time to give this treatment but that treatment and medication were promptly refused. Petitioner did not return for treatment thereafter, as he had been requested to do. In Dr. De Luca's medical opinion, petitioner did not require hospitalization at the time he saw him.

Petitioner testified that he was offered heat treatment and told to return the following day for additional heat treatment, but was not offered any medication or a prescription

for medication. However, the uncontroverted evidence, substantiated by petitioner's own testimony, establishes that he did not give Dr. DeLuca the opportunity to provide him with any treatment of any kind, nor did he tell the doctor that he thought he needed medical attention other than heat treatment. Instead, petitioner conveyed his feelings to a technician at the clinic, who informed him that the clinic could not authorize his going to another doctor, but could not stop him either.

Later that afternoon petitioner consulted and was examined by Dr. M. W. Weinstein, an orthopedic surgeon, who made the following diagnosis: (1) cerebral concussion; (2) spasm of the cervical spine with possible fracture; (3) contusion of the thoracic spine; (4) sprain of the lumbar spine, and (5) radiculitis affecting his lower left extremity.

Dr. Weinstein's conclusion, opinion and recommendation were that petitioner should be hospitalized and treated in cervical traction on a bed-board, and he should have medication for relief of pain, spasm and sleeplessness. It was his opinion that in all medical probabilty the necessary treatment, the best and most efficient treatment, would be a combination of heat treatment, bed rest, traction and medication.

Petitioner, without requesting these services from his employer, entered the Irvington General Hospital at 2:20 P.M. on July 24, 1969. X-rays were taken; he was put in traction; urine, SMA and a battery of blood tests were made, and he was given medication. His hospital records indicate that the X-rays were negative for fracture and dislocation, but revealed a flattening of the cervical spine. His condition was diagnosed at the hospital as a contusion of scalp, sprain of cervical spine and contusion of midback.

Petitioner was kept "in traction" and received daily wet pack treatments from July 24 until August 6, 1969, when he was discharged by Dr. Weinstein, the hospital records indicating his condition as "improved." Thereafter, he made seven visits to Dr. Weinstein's office during the month of August for physiotherapy, and was fitted with a cervical

collar on August 11, 1969 for recurrence of muscle spasm in the neck.

Petitioner contends respondent-employer offered inadequate treatment tantamount to a refusal or neglect to treat. Respondent contends it was not given the opportunity to treat nor was it informed of any emergent necessity to treat at a hospital. It contends that the difference, at best, consists of a difference of method of treatment and that no emergency existed.

The issue to be determined on this appeal is whether the evidence showed a refusal or neglect by respondent to provide petitioner with reasonable and adequate medical care. In order to determine this issue one must examine the pertinent statute, *N. J. S. A.* 34:15–15, which provides:

The employer shall furnish to the injured workman such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the workman of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible; provided, however, that the employer shall not be liable to furnish or pay for physicians' or surgeons' services in excess of fifty dollars and in addition to furnish hospital service in excess of fifty dollars, unless the injured workman or the physician who treated him, or any other person on his behalf, shall file a petition with the workmen's compensation bureau stating the need for physicians' or surgeons' services in excess of fifty dollars, as aforesaid, and such hospital service or appliances in excess of fifty dollars, as aforesaid, and the workmen's compensation bureau after investigating the need of the same and giving the employer an opportunity to be heard, shall determine that such physicians' and surgeons' treatment and hospital services are or were necessary, and that the fees for the same are reasonable and shall make an order requiring the employer to pay or furnish the same.

In support of his contention petitioner relies on the fact that by following and receiving the treatment of Dr. Weinstein he was substantially relieved of his disability and injuries. In effect, he argues that by applying the "hindsight test" under these circumstances he was justified in retaining private medical assistance. He does not dispute that the employer has the right to select the doctor, but justifies

his actions in seeking outside medical assistance based upon his personal evaluation, as already stated.

The difficulty with this argument is that it presupposes that the injured employee has the right and discretion to evaluate what is adequate or satisfactory treatment without affording the employer a reasonable opportunity to provide medical services. Manifestly, if this were so it would negate the legislative mandate giving the employer the duty to select a doctor and to "furnish to the injured workman such medical, surgical and other treatment and hospital service as shall be necessary to cure and relieve the workman of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible * * *." *N. J. S. A.* 34:15-15.

Clearly, the statute (*N. J. S. A.* 34:15-15) does not adopt this prescription. It provides a method of operations and procedures which the employee must pursue in order to justify the employer's liability for any outside medical services not authorized by the employer.

It is a well settled rule that an employer has the statutory right to make the initial choice of physician or hospital when fulfilling his obligation to furnish medical services to an injured employee, and that the employee cannot recover for medical services incurred by him without first giving the employer a reasonable opportunity to furnish such services or to decline without justified reason. See *Cavanaugh v. Snyder & Robbins,* 4 *N. J. Misc.* 801 (Dept. Labor 1926); *Lee v. Rosenthal,* 4 *N. J. Misc.* 890 (Dept. Labor 1926).

Relevant to the contention that the "hindsight test" should apply to justify the employee's failure to notify his employer of his intention or to request the intended services prescribed by Dr. Weinstein, the court was unable to find any case in New Jersey dispositive of this contention under analogous situations. However, in California, where a similar statute is operative, the courts have expressed their views concerning the legal issues presented. They have held,

in effect, that where an employee obtains outside medical treatment, contending the employer's offered medical services are inadequate or ineffective constituting a refusal or neglect to treat, one must presuppose that the employer had already furnished medical services over a reasonable period of time without reasonable effectiveness. If so, the employee may incur outside medical services and be reimbursed, provided he establishes that such services were beneficial in alleviating his injuries admeasured by hindsight comparison.

In the case of *White v. Workmen's Compensation Appeals Board*, 270 *Cal. App.* 2d 447, 75 *Cal. Rptr.* 809 (Ct. App. 1969), an employee who had suffered a back sprain and was unsuccessfully treated by employer's physician for approximately 2½ months with bed rest, heat therapy, physical therapy and exercise, was awarded expenses for removal of a spinal disc and a spinal fusion which successfully cured his condition. The court, in applying the "hindsight test," concluded he had established the inadequacy of the treatment furnished by the employer. To the same effect, see also, *County of Los Angeles v. Industrial Accident Commission*, 13 *Cal. App.* 2d 69, 56 *P.* 2d 577 (D. Ct. App. 1936). Compare *Boyles v. Industrial Accident Commission*, 244 *Cal. App.* 2d 821, 53 *Cal. Rptr.* 541 (D. Ct. App. 1948); *Sun Indemnity Co. of New York v. Industrial Accident Commission*, 85 *Cal. App.* 2d 171, 192 *P.* 2d 765 (D. Ct. App. 1948), where reimbursement by the employers was denied.

Application of the "hindsight test" to the facts of this case is clearly inappropriate because of the petitioner's instant rejection of the medical treatment offered by his employer, thereby precluding a comparison of services upon which a finding of inadequacy of treatment tantamount to a refusal or neglect to treat could be realized.

The transcript establishes that petitioner failed to pursue or comply with the alternate terms of the statute to obtain the employer's authorization for such treatment, nor has he established an emergency to warrant an exception, as

provided by *N. J. S. A.* 34:15–15, in view of the fact that his condition entailed injuries classified within the "soft tissue" category of injuries.

Under the circumstances and evidence of this case, the court concludes that the statute reposes no discretion in the injured employee to seek independent medical assistance and that the outside medical treatment and hospitalization was unauthorized, considering the employer's prompt offer to render treatment which petitioner rejected.

The Legislature, from time to time since the adoption of *N. J. S. A.* 34:15–15 in 1928, has considered many proposed bills and amendments to the statute, authorizing an injured workman to secure his own doctor and medical assistance, but none of these proposals has ever been adopted and enacted into law. "The Legislature giveth and the Legislature taketh away." Therefore, any change in our present law must be initiated by legislative authority and amendment to the statute, and not by judicial decree where the language of the statute is specific and clear.

Accordingly, for the reasons stated above, the judgment of the Division of Workmen's Compensation is in all respects affirmed.