[Civ. No. 31991.   Second Dist., Div. Four.   Feb. 27, 1968.]

ELLA KAMMERER, Petitioner, v. WORKMEN'S COM-PENSATION APPEALS BOARD, CEDARS OF LEB-ANON HOSPITAL et al., Respondents.

Milan Moacanin for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Sheldon M. Ziff, Hanna & Brophy and Sherman Grancell for Respondents.

McCOY, J. pro tem.*—Petitioner seeks review and annulment of that part of the award of the Workmen's Compensation Appeals Board made after reconsideration which denies her reimbursement for self-procured medical expenses and for medical-legal expenses.

Upon her claim for workmen's compensation the referee found that the applicant sustained injury to her left arm, chest and back arising out of and in the course of her employment as a nurse's aide by Cedars of Lebanon Hospital which injury caused temporary and permanent disability of 14 percent after apportionment. The referee also found that she was entitled to reimbursement for specified self-procured medical expenses and medical-legal expenses incurred to lien claimants Dr. LeMoncheck and Dr. Poindexter. Award issued accordingly.[1] The insurance carrier for the employer obtained

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]The award by the referee reads in part: "5. Applicant incurred reasonable litigation expenses of $165.00, payable $85.00 to Edward LeMoncheck, M.D., and $80.00 to Albert Poindexter, M.D., lien claimants." The referee also allowed reimbursement for self-procured medical expenses, payable to the several persons and in the amounts totaling approximatly $1,900 set forth in paragraph 6 of the award, including $439.50 to Dr. Poindexter.

reconsideration, contending that the referee erred in awarding permanent disability, reimbursement for self-procured medical expenses and medical-legal costs. The appeals board affirmed the award of permanent disability but denied reimbursement of self-procured medical treatment and medical-legal costs.[2]

In its decision after reconsideration, made pursuant to Labor Code, section 5908.5, the board stated ''the evidence relied upon'' and specified its ''reasons for the decision'' as follows: ''We are not convinced, however, that the award of medical-legal costs and of reimbursement for self-procured medical expenses is reasonable in light of the entire record. The record discloses that the self-procured medical treatment received by applicant was for a condition pre-existing her industrial injury herein and unrelated to said injury. We are further convinced that applicant is not entitled to reimbursement for her medical-legal costs since she was less than candid in relating her history to the doctors involved.''

There is no real dispute as to the facts. The applicant slipped on some paint remover on the floor in the course and scope of her employment by Cedars of Lebanon Hospital on May 4, 1966. She filed her claim on May 31, 1966. Her attorney directed her to Dr. LeMoncheck who examined her on August 8, 1966. Immediately after the accident applicant was treated at the hospital and hospitalized for eight days, and was an out-patient until May 26. She was thereafter placed in care of Dr. Raker, who released her on September 6, 1966, to return to her duties. The carrier paid temporary disability benefits through September 14, 1966, but refused to provide medical treatment after September 3, 1966.

The reports of doctors at the hospital and the report of Dr. Raker of June 3, 1966, stated that applicant had fractured her left 9th rib, suffered marked erythema, swelling and tenderness about the left forearm, and suffered contusions involving the lower back, left chest wall and neck. An electromyogram of July 11, 1966, showed lower motor neuron changes on the

[2]The findings of the board on reconsideration, here challenged by petitioner, read in part: ''5. Applicant did not reasonably incur medical-legal costs to Dr. Edward LeMoncheck and Dr. Albert Poindexter. 6. Dr. Edward LeMoncheck and Dr. Albert Poindexter did perform medical-legal services for medical examinations and reports of the reasonable value of $85.00 and $80.00 respectively, and said doctors are entitled to a lien therefor against compensation awarded applicant herein. 7. Applicant did not reasonably, necessarily or actually incur self-procured medical expense.''

right in the S1 radicular distribution and mild hyper-irritable change in the right C7 supplied muscles. A neurosurgeon examined her on July 21, 1966. His report concluded that as a result of the accident she sustained a fracture of one or more of the left ribs, a strain of the cervical spine and strain of the lumbar spine and apparently protruded a lumbar intervertebral disc. Dr duRoy for the carrier examined her on October 4, 1966. He reported that her medical history reflected in the records of the hospital showed that she had had treatment involving low back pain as far back as 1961. He noted 11 specific episodes. He described her symptoms and complaints as covering a wide range of bizarre pathologies unrelated to the industrial injury. He concluded that she had recovered from the industrial injury and her condition was permanent and stationary. He commented: ''Her present clinical picture and complaints are virtually a carbon copy of the many previous entries made in reference to her medical care.''

On September 27, 1966, applicant obtained self-procured medical treatment by Dr. Poindexter. He saw her several times and finally on October 21, 1966, he hospitalized her at Queen of Angels Hospital where she was placed in pelvic traction, given muscle relaxants, analgesics and sedatives. His impression was: ''Cervical and lumbo-sacral radiculitis secondary to discogenic disease in the cervical area as well as the lumbosacral area.'' Dr. Poindexter's report of November 22, 1966, stated that on October 18, 1966, applicant advised that her pain had become more severe in both the neck and back area and pain pills caused nausea and vomiting and decision was made to hospitalize her; after several days of treatment in the hospital the cervical pain became less pronounced and eventually she became asymptomatic in that area; the low back pain with pain and numbness to the right leg was more prolonged; an electromyogram was normal; repeat X-rays remained unchanged; a lumbosacral back support was fitted. Applicant was discharged from the hospital on November 14, 1966.

In his report Dr. Poindexter stated: ''Medical records such as those that are available have been reviewed especially that furnished by Dr. Robert M. duRoy who states that he had reviewed some 265 pages of the patient's previous medical record. The point that he makes is that the patient appeared to have symptoms of her back prior to her fall of May 4, 1966 which appeared to be well documented insofar as the dates

that he lists in his report, all being related to her back.'' Dr. Poindexter conceded that applicant has discogenic disease which preceded the industrial injury but was of the opinion that the injury ''contributed to and did aggravate this pre-existing condition,'' ''that her present disability is definitely related to her accident of May, 1966,'' and she ''is totally disabled and permanently disabled, however, at some future time she may be permitted to perform light duties. I do not feel that she will be ever able to perform heavy duties again especially those required of a Nurse's aid.''

At the first hearing on applicant's claim held on January 12, 1967, all of the prior medical records of applicant from Cedars of Lebanon Hospital were under subpoena before the referee. The referee stated that she would like to have Dr. LeMoncheck, to whom applicant had been sent by her attorney in August 1966, review these records and submit a report taking them into consideration. On the referee's recommendation and by stipulation of the parties, these records were given to Dr. LeMoncheck who then wrote his report dated January 30, 1967.

At the second hearing on February 28, 1967, applicant testified that her condition was worse than it had ever been, she did not recall having been provided medical care and treatment for her complaints prior to the industrial injury, and she had not received therapy since September 1966 except for ''nerve pills'' which she had been taking upon the advice of Dr. Poindexter.

In the opinion of the referee on findings and award she stated: ''On the basis of applicant's testimony, her past medical history, and particularly Dr. Poindexter's report of November 22, 1966, applicant is found to have permanent disability of her spine limiting her to light work, which for her age and occupation, rates at 56%. Apportionment of 25% of permanent disability to injury herein is found, relying particularly upon Dr. LeMoncheck's report of January 30, 1967.'' Upon reconsideration the board sustained the finding that the injury caused temporary total disability from May 5, 1966, through November 14, 1966, and permanent disability of .14 percent after apportionment. It found that applicant ''did not reasonably, necessarily or actually incur self-procured medical expense'' and ''did not reasonably incur medical-legal costs'' to Dr. LeMoncheck and Dr. Poindexter. However, it also found that these doctors did perform medical-legal services for medical examinations and reports of the reasonable value of $85 and $80 respectively and that the

doctors were entitled to a lien against the award to applicant of permanent disability.[3]

The record reflects that both Dr. LeMoncheck and Dr. Poindexter were informed of applicant's medical history at the time they made the reports on which the award of permanent disability was made and that without their reports the award would have no evidence to support it. The petition for review concedes that applicant's ability to remember and to understand "is not the best," and that this fact was noted by at least three doctors who made reference to her "inadequate insight." Petitioner contends, nevertheless, that even if it is true that she was "less than candid in relating her history to the doctors involved," that fact does not justify the denial of reimbursement for medical-legal costs where it is clear from the record that the doctors' reports were based on an understanding of her medical history, they were necessary to support the award, and they were reasonable in amount.

In our opinion the applicant has established the right to reimbursement for certain medical-legal costs. The original examination and report of Dr. LeMonheck may have been made without the benefit of a correct medical history from the applicant. The record does not reflect whether the amount of his lien claim included any charge for this report or whether any portion of the claimed medical-legal costs included charges for reports based on insufficient or erroneous medical history. It is clear, however, that at least some portion of the applicant's claim for medical-legal costs based on this examination and report is justified, i.e., that it was "reasonably, actually, and necessarily incurred."

The finding of the board is limited to the statement that applicant "did not reasonably incur" these medical-legal costs. Section 4600 expressly provides that the "reasonableness of and necessity for incurring such expenses to prove a contested claim shall be determined with respect to the time when such expenses were actually incurred. Expenses of medical testimony shall be presumed reasonable if in conformity with the fee schedule charges provided for impartial medical experts appointed by the administrative director."

---

[3]No point is raised as to the propriety of the liens allowed by the board. Section 4903 of the Labor Code provides that the board may allow "as liens against any sum to be paid as compensation" the reasonable expense incurred by or on behalf of the injured employee as provided in Labor Code, section 4600. Section 4600 includes the provision that the employee shall be reimbursed for expenses reasonably, actually, and necessarily incurred for medical-legal expenses.

While it is possible that a failure to relate a complete medical history to a doctor might affect his diagnosis and treatment and result in a medical report and opinion which would be incompetent to support an award based on industrial injury, it would not affect the reasonableness of his charges. It would make the report useless and therefore unnecessary. However, that is not the case in the present instance in respect to the report of Dr. Poindexter of November 22, 1966, and the report of Dr. LeMoncheck of January 30, 1967. The record compels a finding that at least the expenses of these reports were reasonably, actually, and necessarily incurred. We find no authority in the law for denying reimbursement for such expenses on the record before us.

Applicant also contends that there is no evidence to support the conclusion of the board that the self-procured medical treatment received by her after the carrier refused to provide further treatment was for her preexisting condition and unrelated to the industrial injury. The treatment was for relief of pain in both the neck and low back. The finding that temporary disability as a result of the industrial injury continued to the date she was discharged from the Queen of the Angels Hospital on November 14, 1966, was based on Dr. Poindexter's report.

The lighting up or aggravation of a preexisting disease is itself an industrial injury. "In such cases full compensation for the entire disability suffered is recoverable although the physical condition of the employee contributed to and increased the disability caused by the injury or prolonged and interfered with healing and recovery." (*Tanenbaum* v. *Industrial Acc. Com.*, 4 Cal.2d 615, 617 [52 P.2d 215].) However, this rule is subject to the rule of apportionment provided in section 4663 of the Labor Code that the normal progress of a preexisting disease cannot be considered in determining compensation for the aggravation resulting from the later injury.

Here the appeals board has attributed all temporary disability through November 14, 1966, to the industrial aggravation and has attributed 75 percent of permanent disability to the normal progress of applicant's preexisting discogenic disease, yet it has attributed the need for medical care during the period of temporary disability to preexisting causes. In this instance the employee was able to work prior to the industrial injury although it appears that she had numerous prior episodes of pain due to discogenic disease and arthritis. Dr. Poindexter was of the opinion that her disability and

need for medical treatment was caused by the industrial injury. The doctors provided by the carrier were of the opinion that any disability or need for medical treatment was nonindustrially caused. The finding of continuing temporary disability and the finding of partial permanent disability attributable to the industrial injury are supported by Dr. Poindexter's report. The reports of the carrier's doctors were obviously rejected on these issues.

In *McCoy* v. *Industrial Acc. Com.*, 64 Cal.2d 82 [48 Cal. Rptr. 858, 410 P.2d 362], the commission found that an applicant was temporarily disabled from June 1962 to January 1963 because of industrial injury but thereafter was not temporarily disabled or in need of further medical treatment. These findings were based on medical reports of physicians furnished by the carrier. Subsequently applicant requested additional medical treatment from the carrier which was denied. She submitted to self-procured surgery which relieved her from the effects of the injury. Upon further application for benefits, the commission awarded additional temporary disability for the period of convalescence after surgery but denied reimbursement of the self-procured medical treatment and temporary disability benefits for the period intervening before surgery. On review, the court directed the commission to award reimbursement for self-procured medical care after consideration of the issue of the reasonableness of the charges and to award temporary disability for the intervening period. In respect to the contention that since the carrier's doctors who examined her earlier were of the opinion that she was not disabled the commission was justified in denying temporary disability for the intervening period, the court said: "The commission was not entitled to rely on medical reports which it learned were erroneous in denying the claim for disability."[4]

The present petition points out that on October 26, 1966, the employee advised the carrier that she was obtaining self-

[4]In *McCoy* v. *Industrial Acc. Com.*, 64 Cal.2d 82 [48 Cal.Rptr. 858, 410 P.2d 362] the rule for reimbursement of self-procured medical expenses is set forth as follows (p. 89): "If an employer has refused an injured employee treatment for an industrial injury or claims that further care is unnecessary or futile, it is liable for the reasonable cost of medical care secured by the employee from a physician of his own choosing if such treatment is given within a reasonable time after the employer's refusal, if there has been no substantial change in the employee's condition before independent medical advice is rendered and if, at the time reimbursement is sought, the employee can show that the treatment he received was 'reasonably required to cure or relieve from the effects of the injury.' "

procured treatment but it did not seek to reexamine her and maintained its position of refusing treatment. Dr. Poindexter reported that his treatment and hospitalization resulted in reduction of pain from which applicant had been unable to obtain any prior relief and in improvement in her condition. However, the applicant's testimony at hearing on February 28, 1967, was that her condition was worse than it has ever been. The appeals board urges that this was evidence that the treatment and hospitalization did not accomplish any substantial benefit to applicant.

Section 4600 of the Labor Code directs that medical and hospital treatment, including nursing, medicines, etc. "which is *reasonably required to cure or relieve* from the effects of the injury shall be provided by the employer." (Italics added.) It further provides: "In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment." In the typical case where reimbursement is required, the refusal to furnish treatment has been based on a diagnosis which, after self-procured surgery, has been proved to be erroneous. In the present instance it appears that the refusal was based on medical opinion that all disability remaining was the result of nonindustrial contribution. By finding that temporary disability attributable to the industrial injury continued through November 14, 1966, the appeals board rejected those opinions of the carrier's physicians as erroneous. Their opinions that no medical treatment was reasonably required to cure or relieve from the effects of the injury were based on the assumption that no disability attributable to the injury remained. An expert opinion based on assumptions of fact which are erroneous will not sustain a finding. (*Winthrop* v. *Industrial Acc. Com.*, 213 Cal. 351 [2 P.2d 142]; *Blankenfeld* v. *Industrial Acc. Com.*, 36 Cal.App. 2d 690 [98 P.2d 584]; *Gamberg* v. *Industrial Acc. Com.*, 138 Cal.App. 424 [32 P.2d 413].)

We are not concerned with the findings of temporary disability and permanent disability, since the carrier has not sought review. (See *Royal Globe Ins. Co.* v. *Industrial Acc. Com.*, 63 Cal.2d 60, fns. 1 and 2 [45 Cal.Rptr. 1, 403 P.2d 129].)

■ Applicant also contends that the appeals board acted arbitrarily in changing the findings of the referee without a transcript of the testimony. In *Allied Comp. Ins. Co.* v. *Industrial Acc. Com.*, 57 Cal.2d 115 [17 Cal.Rptr. 817, 367

P.2d 409], it was held that the obligation of the panel is to achieve a substantial understanding of the record and it may do so by reference to the referee's summary of the testimony where it is not claimed that the referee's summary is in error. In the present case it appears that the board achieved a substantial understanding of the record but did not correctly apply the law.

The award is affirmed as to the allowances made to applicant. The cause is returned to the appeals board with instructions to award reimbursement for medical-legal costs and self-procured medical treatment through November 14, 1966, after a proper determination of what medical-legal costs were "reasonably, actually, and necessarily incurred" and the reasonableness of the charges for self-procured medical treatment.

Files, P. J., and Kingsley, J., concurred.