[Civ. No. 32779. First Dist., Div. One. Mar. 6, 1974.]

ALFRED E. MANTEL, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
GENERAL MOTORS CORPORATION, Respondents.

**COUNSEL**

Levy & Van Bourg, Levy, Van Bourg & Hackler, William R. Butler and Barry J. Williams for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen, Robert N. MacLean, Franklin O. Grady, Sheldon C. St. Clair, Raymond G. Agnew and Charles Lawrence Swezey for Respondents.

## OPINION

**SIMS, J.**—By petition for writ of review the petitioning employee seeks an adjudication annulling, vacating and setting aside an opinion and decision of respondent board after reconsideration (involving a complete rehearing), which affirmed a referee's earlier findings, awards and orders which ordered that applicant take nothing, other than medical-litigation costs on an amount to be adjusted by the parties, by reason of his two applications for compensation. He seeks a definite award of the medical-litigation costs set forth in his petition, and a finding that he sustained injuries arising out of and occurring in the course of his employment at the respective times alleged in his applications, and he also requests that the matter be remanded to respondent board for the purposes of (1) securing a report of the referee who conducted the rehearing; (2) excluding any material not received in evidence at the rehearing; and (3) requiring the board to state the reasons for granting the reconsideration, the scope of the reconsideration, and the evidence relied upon in granting the reconsideration.

He makes the following contentions: (1) the appeals board in affirming the award of the referee failed to award medico-legal costs reasonably incurred to prove a contested case; and (2) it failed to find the costs reasonably incurred to prove a contested case; (3) it failed to obtain a report of the referee who conducted the rehearing; (4) it relied on material not properly in evidence on the rehearing; (5) it erred in its original order for reconsideration in failing to comply with the provisions of section 5908.5 of the Labor Code and in ordering a trial de novo; and (6) it erred in finding that the petitioner did not sustain an injury arising out of and occurring in the course of his employment.

A writ was issued to review the merits of these contentions and after hearing it is concluded as follows: The proceedings taken following the order granting reconsideration were not rendered invalid because of procedural deficiencies in that order; the applicant was not as a matter of law entitled to findings of fact and conclusions of law, or recommendations from the referee who conducted the hearings after reconsideration; whether the proceedings be construed as continuous or as requiring a trial de novo, there was no prejudicial error in the reference to material which was before the referee at earlier hearings, but which was not brought to the attention of the referee in the later hearings; the matter must be remanded to determine whether or not there was any injury arising out of and occurring in the course of applicant's employment on either September 29, 1969, or April 7, 1970, which gave rise to a disability or right to medical treatment, other

than for the lumbar disc disease from which the applicant was suffering late in 1970 and in 1971; and since the matter must be remanded to the appeals board, any question remaining concerning the adjustment and payment of applicant's medical-litigation costs should be settled there.

On November 7, 1969, petitioner filed an application in which he alleged that on September 29, 1969 he sustained an injury—"muscle strain in legs" arising out of and in the course of his employment by respondent General Motors Corporation when he was pulling on a front truck suspension and felt pain in his groin and leg, and that the injury caused disability consisting of pain in the left groin area. He alleged that medical treatment had been provided by three doctors of the Permanente Medical Group, and that there was disagreement concerning the employer's liability for temporary disability indemnity, reimbursement for medical expense, medical treatment, compensation at the proper rate and medical-legal expense. Hearing on this matter, originally set for January 30, 1970, was taken off calendar at the request of the applicant's attorney. Lien claims filed in the proceedings indicate that petitioner received state unemployment insurance disability payments for the period from October 23 through December 14, 1969.

On May 15, 1970, petitioner filed a second application in which he alleged that on April 7, 1970 he sustained an injury—"muscle strain-leg pain in lower back"—arising out of and in the course of his employment while he was lifting the rear suspension of a truck, and that the injury caused disability consisting of pain in low back and left groin area. He alleged that medical treatment had been provided by two doctors of Kaiser Health Plan, and that there was disagreement concerning the employer's liability for temporary disability indemnity, reimbursement for medical expense, medical treatment and legal expense. Lien claims filed in the proceedings indicate that petitioner received state unemployment insurance disability payments from April 14 through August 16, 1970, from August 18 through August 30, 1970, that he was hospitalized from August 31 through September 10, 1970, and that he received further disability benefits for the periods from September 7 through September 13, 1970, and from September 15 through October 19, 1970.

The two applications were consolidated for hearing and came on for hearing on October 9, 1970. At the time of that hearing it appeared that some medical treatment had been furnished by the employer who was then permissibly self-insured, and that the remaining issues were as follows: (1) injury arising out of and in the course of employment; (2) need for medical treatment; (3) medical-litigation costs; (4) nature, duration and extent of disability, including a claim for temporary disability indemnity

for the period October 23, 1969 through December 14, 1969, under the first application, and from April 15, 1970 to the date of hearing and continuing under the second application; (5) permanent disability; and (6) lien claim of the state for disability payments made in 1969. At this hearing testimony was received from the applicant, a nurse at the employer's plant to whom applicant had made a complaint of personal illness on March 9, 1970, and two doctors, Dr. Palmer and Dr. Treanor who participated in a complete workup which the applicant underwent in connection with his hospitalization on August 31, 1970. The applicant offered a report of Dr. Wilson summarizing treatment by Permanente Medical Group from October 21, 1969, through July 21, 1970. The employer offered medical reports of examinations on October 16, 17 and 21, 1969, and January 15, 1970; records of applicant's complaints of injury and illness to his employer; an examination by Dr. Palmer on July 20, 1970; an examination by Dr. Samilson on September 1, 1970; and an examination by Dr. Eliaser during applicant's hospitalization from August 31 through September 11, 1970. Leave was given to present records of Kaiser Foundation Hospital and the Permanente Medical Group, and they were later received as an exhibit.

On January 25, 1971, the referee filed his findings, award and order with respect to each application. He found that applicant did not sustain any injury arising out of and occurring in the course of his employment on either September 29, 1969, or April 7, 1970, and that applicant had reasonably incurred medical-litigation costs, payment of which was to be adjusted by the parties. Applicant was awarded, "(a) medical-litigation costs in the amounts to be adjusted by the parties herein; [¶] (b) interest as provided by law." It was ordered that plaintiff take nothing further by reason of either claim.

I

The applicant thereafter substituted his present attorneys and filed a petition for reconsideration. In this petition it is alleged, "Applicant's position is simple. There is absolutely no evidence to support the Referee's Finding that there was no injury and it is difficult to see how he came to such a conclusion. While there may be evidence to support a Finding that the injuries caused no permanent disability, it is clear that there was temporary disability as a result of the injuries and a need for medical treatment." It was requested, ". . . that the Board either return this matter to calendar on all issues at which time the Department of Human Resources Development would be asked to file their medical reports, or that the matter be referred to the Commission Medical Bureau or to an Indepent [sic] Medical Examiner to resolve the questions of disability in this case."

The referee filed a report which recited, "The decisions were based on the medical opinions of Robert Samilson, M.D. of September 2, 1970; Robert Palmer, M.D. of September 23, 1970 and August 5, 1970; Robert J. Treanor, M.D. of September 10, 1970, and Maurice Eliaser, M.D. of October 1, 1970, as well as the testimony of Drs. Palmer and Treanor at the hearing of October 9, 1970.

"As the July 27, 1970 report of Carl E. Wilson, M.D. (App's. 1 for Identification) stated that a diagnosis had not been made, time was allowed for filing the Kaiser records. Examination of these records indicates that no diagnosis has been made to account for applicant's complaints." He recommended, "Deny applicant's Petition for Reconsideration."

In their reply to the referee's report and recommendation applicant's attorneys drew a distinction, discussed below (see part IV), between the issue of whether or not the applicant sustained an injury on either, or both, of September 29, 1969 and April 7, 1970, and the question of whether the doctors could later diagnose the injury that occurred. It was pointed out, "While the Board could conceivably make findings that would result in no monetary payments or other benefit to applicant, he is entitled to a finding of injury arising out of and in the course of his employment on the present record."

The employer filed an answer to the petition in which it stressed the evidence that the low back pain of which the applicant complained in 1970 was not medically related to the symptoms of which the applicant complained at the time of each of his alleged injuries.

The appeals board granted the petition for reconsideration on March 15, 1971, and annulled the referee's finding and award with respect to each application. The opinion and order recites: "The Board, after reviewing the record, has concluded that the interests of justice require that these cases be restored to the trial calendar for a complete rehearing on all issues including the issue of injury. Reconsideration will be granted for the purpose of such rehearing and for such further proceedings as the Board may thereafter determine to be appropriate."

■ Thereafter the matter was set for hearing before a referee and the proceedings reviewed below ensued. Applicant seeks to attack the order granting reconsideration because it failed to comply with the provisions of section 5908.5 and the precepts laid down in *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432].[1]

---

[1]Section 5908.5 provides in pertinent part: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering,

After participating in a complete rehearing as ordered by the board, the applicant now requests an order that the appeals board be required to state the reasons for the granting of reconsideration, the scope of reconsideration, and the evidence relied upon in granting reconsideration.

The order granting reconsideration was made March 15, 1971. The applicant made no objection to the order at the time. Since the petition for reconsideration was granted, under the provisions of section 5950, the time within which "[a]ny person affected by" that order could apply for writ of review was extended to "within 30 days after the filing of the order, decision or award following reconsideration." In *Solomon* v. *Workmen's Comp. Appeals Bd.* (1972) 24 Cal.App.3d 282 [100 Cal.Rptr. 899], reconsideration was granted on the petition of the employer-carrier following an award to the employee. Additional evidence was taken and the award was reduced. The court on finding a lack of compliance with the provisions of section 5908.5 ordered: "The matter is remanded to the board, with directions to reconsider its decision after having taken the necessary procedure to comply with the ruling in this opinion in regard to the application of section 5908.5 of the Labor Code." (24 Cal.App.3d at pp. 287-288.) In *Zozaya* v. *Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 464 [103 Cal.Rptr. 793], the appeals board first granted the employer's petition for reconsideration and secured further evidence which it found sustained the findings and award of the referee. A second petition by the employer was granted, a new rating was secured, and the award was reduced. This

---

or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a referee and shall be in writing, signed by a majority of the appeals board members assigned thereto, and shall state the evidence relied upon and specify in detail the reasons for the decision."

Reference to *LeVesque* v. *Workmen's Comp. App. Bd.* is not in point. The court there ruled, "We hold that if the appeals board denies a petition for reconsideration its order may incorporate and include within it the report of the referee, provided that the referee's report states the evidence relied upon and specifies in detail the reasons for the decision. (See Lab. Code, § 5908.5.)" (1 Cal.3d at p. 635.) It did, however, refer to *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753 [68 Cal.Rptr. 825, 441 P.2d 633], as follows: "In granting a petition for reconsideration, however, the appeals board should comply with section 5908.5 in order to apprise the parties and the referee as to the basis for reconsideration. We cannot find any provision analogous to section 5909 which applies to the granting of reconsideration; if the appeals board complies with section 5908.5, the parties will understand what new evidence or arguments they should present upon reconsideration. (See Lab. Code, §§ 5906, 5908.) If the appeals board grants reconsideration, and without taking further evidence, affirms, rescinds, or amends the original award (see Lab. Code, §§ 5906, 5907), *Evans* requires full compliance with section 5908.5." (*Id.*, fn. 11. See also *Lundberg* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 436, 440-441 [71 Cal.Rptr. 684, 445 P.2d 300]; *Zozaya* v. *Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 464, 471 [103 Cal.Rptr. 793]; and *Solomon* v. *Workmen's Comp. Appeals Bd.* (1972) 24 Cal.App.3d 282, 286-287 [100 Cal.Rptr. 899].)

court on review found that each order granting reconsideration was inadequate under the provisions of section 5908.5. It annulled the second order granting reconsideration and the opinion and decision thereafter made. (27 Cal.App.3d at p. 472.) With respect to the first order it was noted, "We observe that the 'first' order granting reconsideration made on December 30, 1970, was subject to the same deficiency. That order provided, in pertinent part, as follows: 'The Board, after reviewing the record, has concluded that an independent medical evaluation would be helpful to it in making a determination as to the nature, extent and cause of applicant's disability. Reconsideration will be granted for the purpose of obtaining such additional medical evidence and for such further proceedings as the Board may thereafter deem to be appropriate.' The time to review said order as well as the order granting reconsideration expired on June 11, 1971. (§ 5950.) Petitioner was apparently willing to waive any deficiency in the order granting reconsideration since the final decision after reconsideration was in his favor. Petitioner did not seek a review of said orders and they are, therefore, not subject to attack on this appeal with respect to subsequent orders. [Citation.]" (27 Cal.App.3d at pp. 471-472, fn. 2.)

In this case the applicant seeks to attack an order which granted him the reconsideration which he sought. It is true the appeals board did not summarily annul the findings, award and order of the referee and grant the petitioner an award. It did, however, grant the applicant the further hearing he requested. Although section 5950 grants a right of review to "[a]ny person affected by an order," it is inconsistent with normal processes of judicial review to permit attack by one not aggrieved by the order. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 266-288, pp. 4257-4275, passim, particularly §§ 266-267 [invited error], § 272 [implied waiver from failure to object], § 273 [acts indicating acquiescence in ruling], § 276 [point not properly raised below], and §§ 281-283 [theory of trial].) The reasons for granting the reconsideration were well known to both parties. The contention of applicant was set forth in the order which recited, "It is contended that applicant's uncontradicted and credible testimony establishes that the injuries occurred as alleged." The applicant himself asked a return "to calendar on all issues." He, therefore, cannot complain of the scope of the reconsideration. In fact without objection he joined in the complete rehearing in which eight issues were framed.[2] The evidence relied upon in

---

[2]These issues were:
"1. Injury, arising out of and in the course of employment;
"2. Need and liability for further medical treatment;
"3. Liability for self-procured medical treatment;
"4. Medical-legal costs;
"5. Nature and extent of disability;

granting reconsideration was not set forth in the order, but it is significant that applicant now complains (see part III below) that the appeals board erroneously considered, on reconsideration, unfavorable evidence produced at the first hearing. Under these circumstances the order granting reconsideration should not be set aside because of a failure to comply with the provisions of section 5908.5 at the request of the party whose petition for reconsideration was granted.

In *Albert Van Luit Wallpaper Co.* v. *Workmen's Comp. Appeals Bd.* (1973) 36 Cal.App.3d 88 [111 Cal.Rptr. 247], the employee successfully petitioned for reconsideration after compensation was denied by the referee. Following the taking of additional evidence the appeals board made an award which the employer and two insurance carriers sought to have reviewed. The court, after finding substantial evidence to support the award, considered, at the urging of the Supreme Court, one of the carrier's procedural objections. It concluded, "While the order [granting reconsideration] did not meet the test so prescribed, it did, in the light of the petition for reconsideration, point up the issue to be resolved—namely the conflict in the earlier medical evidence and the extreme weakness of that evidence. Substantial procedings followed, with no suggestion, either at the board level or here, that the employer and its carriers were in any doubt as to the issue to be litigated or that they were under any handicap in presenting and arguing their side of that issue. For us, on the record before us, to send the case back to the board would result in nothing but a wasteful spinning of the wheels. Alerted by the petition before us, the board easily can draw and promulgate in elaborate detail a new order granting reconsideration and then, on the record it now has, refile its present order and decision granting the identical award. To impose that useless procedure on a busy administrative agency serves no public purpose." (36 Cal.App. 3d at pp. 91-92.)

Furthermore it should be noted that if the applicant's attack on the order

"6. Apportionment;
"7. Lien of Department of Human Resources Development;
"8. Lien of Kaiser Foundation Hospitals.
"There is a claim for temporary disability for the period October 17, 1969, to and including December 14, 1969, and again commencing April 8, 1970, to and including December 1, 1970, again commencing December 8, 1970, to and including January 25, 1971, again commencing February 8, 1971, to and including March 1, 1971, and again commencing March 17, 1971, to and including April 18, 1971."
By letter of May 4, 1972, the applicant stated: "We are claiming temporary disability in this case for the periods as set forth in the Department of Human Resources Development's Amended Lien which was served on the parties on October 14, 1971 and in addition to those periods we are claiming temporary disability for the period 10/10/71 to the present and continuing. . . ."

granting him reconsideration was successful to the point of annulling that order, he would be left with the take nothing findings and award of the referee.

The proceedings taken following the order granting reconsideration were not rendered invalid because of procedural deficiencies in that order.

## II

█ Pursuant to the opinion and order granting reconsideration a hearing was held before a new and different referee on August 17, 1971. At this time the issues were framed (see fn. 2 above); the applicant testified again concerning the occurrence of his injuries and his symptoms and treatment; and Dr. Wilson, who first saw the applicant October 21, 1969, testified concerning the records of the Kaiser Foundation Hospital examinations and treatments. Dr. Wilson on the basis of his review of the Kaiser records and the records of other physicians and his examination of the patient concluded that the applicant's back complaints were related to his injury of September 29, 1969. In connection with this hearing the defendant filed what appears to be fourteen reports from five doctors, and the applicant filed eight reports from seven doctors. The matter was continued to be reset.

On September 24, 1971, applicant was given a myelogram which was diagnosed as reflecting lumbar disc disease at the L 4-5 vertebrae, and on December 14, 1971, a distraction fusion operation was performed.

On March 15, 1972, the hearing was resumed and the referee took testimony from the applicant concerning his operation and what he had told Dr. Palmer, an examiner for the employee. Dr. Palmer was called for cross-examination by the applicant, and the applicant presented the testimony of Dr. Johnston who performed the December 1971 operation. In connection with and following this hearing the defendant filed six reports from three doctors, and the applicant filed three reports from another doctor.

On May 1, 1972, the hearing was continued and testimony was received from the employer's nurse who received applicant's complaint on April 7, 1970, from Dr. Gordon who had examined applicant, reviewed the reports in the case, and written 4 reports which applicant had filed in the matter, and from Dr. Palmer who was the author of 10 reports filed by the employer, and the source of a later report filed in August 1972. At the conclusion of the hearing the referee ordered that the matter be referred to the appeals board for further disposition.

Each side requested an opportunity to submit a written memorandum in

the case. Under date of June 2, 1972, the applicant requested that the referee who conducted the three hearings after reconsideration make appropriate recommendations. The defendant on its part requested oral argument before the appeals board. On June 9 a deputy commissioner advised applicant, ". . . please be advised that the Board frequently will request recommendations from its referees who hear cases pending on reconsideration. The above case should be no exception . . . ." On July 13, 1972, the appeals board called for written briefs, and deferred action on the request for oral argument. The record prepared by the referee consisted solely of the minutes of each of the three hearings accompanied by a summary of the evidence. The exhibits, and according to the opinion, transcripts of the testimony were available to the appeals board.

In his opening points and authorities applicant requested that the appeals board direct the referee to prepare findings of fact and conclusions of law. The applicant's request was repeated in a letter filed after defendant had filed its memorandum and a supplement thereto. The defendant opposed the request and wrote as follows: "Actually, in this file 2 referees have heard this case and if the matter were to be handled as such, both would have to review the file. The defendants previously made their request for oral argument before the Board because in this instant, it is a Board matter for decision. That, of course, is the reason the referees handle the matter in the fashion they have done which is in accordance with the rules." The board rendered its opinion and decision after reconsideration on January 22, 1973, apparently without securing any recommendation from the referee or calling for oral argument. Applicant then sought this review.

The crux of the argument concerning several of the contentions made by applicant, as is evident from the last paragraph, is whether the three hearings following the grant of the order of reconsideration were in truth and fact a new trial or merely the taking of further evidence.

Several factors suggest that the appeals board intended to order a complete rehearing. In the first place it said so: "The Board, after reviewing the record, has concluded that the interests of justice require that these cases be restored to the trial calendar *for a complete rehearing on all issues including the issue of injury*." (Italics added.) Secondly, it "annulled" the findings, award and order entered in the previous proceedings. It appears that the referee and the parties contemplated a new hearing as though no testimony had been taken before, because no attempt was made to incorporate the testimony, reports and other exhibits from the prior hearing into the new proceedings. The applicant testified again as to his injuries, and, as will be noted below, many of the reports used in the prior proceedings

were re-introduced in connection with the new hearings. Moreover the commissioner's letter of June 9, 1972, indicated that the appeals board might secure a recommendation from the referee.

If in fact the proceedings should be treated as new proceedings, the provisions of section 5309 demonstrate that the referee would have broad powers. They state, "The appeals board may, in accordance with rules of practice and procedure which it shall adopt and upon the agreement of the parties, on the application of either, or of its own motion, and with or without notice, direct and order a referee: [¶] (a) To try the issues in any proceeding before it, whether of fact or of law, and make and file a finding, order, decision, or award based thereon. [¶] (b) To hold hearings and ascertain facts necessary to enable the appeals board to determine any proceeding or to make any order, decision, or award that the appeals board is authorized to make under Divisions 4 or 5, or necessary for the information of the appeals board." (§ 5309.) Rule 10345 of the Rules of Practice and Procedure of the Appeals Board (see tit. 8, pt. 1, ch. 4.5, subch. 2, Cal. Admin. Code) provided, prior to amendment in 1973, and provides in pertinent part, "In any case which has been regularly assigned to him for trial under the provisions of Labor Code Sections 5309 and 5310, a referee shall have full power, jurisdiction and authority to hear and determine all issues of fact and law presented to him and to issue such interlocutory and final orders, findings, decisions and awards as may be necessary to the full adjudication of the case. . . ." Section 5313 and rules 10586 and 10750[3] provide for a summary of the evidence and also contemplate

---

[3]Rule 10586 provides: "Within the time required by law, the Appeals Board or referee shall, in every proceeding, make the summary of evidence required by Section 5313 of the Labor Code. For every hearing there shall be prepared a separate and complete summary.

"(a) The summary of the original hearing shall, by clear and concise statements, incorporate and digest the following:

"(1) Occupation and age of the injured and cause and character of the alleged injury;

"(2) Issues raised;

"(3) A fair and unbiased summary of the testimony given by each witness, and any stipulations entered into between the parties; and

"(4) Disposition entered. If continuance be granted, the reason therefor shall be given;

"(b) The summary of continued and further hearings shall, by clear and concise statements, incorporate and digest the following:

"(1) Additional issues raised, if any; and

"(2) Subject matter required under paragraph (a), subdivisions 3 and 4;

"(c) The opinion on decision, in cases of Appeals Board or referee findings, orders, decisions, or awards shall set forth clearly and concisely the reasons for the decision made, including a discussion of the evidence."

Rule 10750 provides: "The record of a proceeding shall consist of: the pleadings,

that findings, orders, decisions and awards shall set forth the reasons for the decision made.

On the other hand, the statutory provisions which provide for reconsideration by the appeals board do not expressly authorize the action which it purported to take in this instance. Section 5906 provides in part, "Upon the filing of a petition for reconsideration, or having granted reconsideration upon its own motion, the appeals board may, with or without further proceedings and with or without notice *affirm, rescind, alter,* or *amend* the order, decision, or award made and filed by the appeals board or referee *on the basis of the evidence previously submitted in the case,* or *may grant reconsideration and direct the taking of additional evidence. . . ."* (Italics added.) (See also § 5907.) Although "annul" may be synonymous with "rescind" (see Roget's Internat. Thesaurus (3d ed.1962) § 777.2, p. 514), the second clause indicates that a continued rather than a new hearing is contemplated when the appeals board is dissatisfied with the final order, decision or award because of uncertainties in the evidence. This conclusion is fortified by examination of the provisions of section 115 which provide in pertinent part, ". . . The chairman shall assign pending cases in which reconsideration is sought to any three members thereof for hearing, consideration and decision. . . . Any case assigned to three members shall be heard and decided only by them, unless the matter has been reassigned by the chairman on a majority vote of the appeals board to the appeals board as a whole in order to achieve uniformity of decision, or in cases presenting novel issues." Section 5908.5 expressly directs, "Any decision of the appeals board . . . affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board and not by a referee . . . ." The appeals board having granted reconsideration must make the order, decision or award itself. (See *Cal. Shipbuilding Corp.* v. *Ind. Acc. Com.* (1946) 27 Cal.2d 536, 543-544 [165 P.2d 669]; and *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1961) 189 Cal.App.2d 23, 27 [10 Cal.Rptr. 745].) The distinction is recognized in the rules. Rule 10862 provides: "Where reconsideration has been granted and the case referred to a referee for proceedings on reconsideration, he shall, upon the conclusion thereof, prepare a summary of evidence received in the proceedings after reconsideration granted." (Cf. rule 10586(c), fn. 3 above, and the provisions for a referee's recommendation on a petition for reconsideration found in rule 10860.) The authority of the appeals board to adopt its own rules of procedure is well es-

minutes of hearing, summary of evidence, transcripts, if prepared and filed, proofs of service, evidence received in the course of a proceeding, notices, petitions, briefs, findings, orders, decisions and awards."

tablished. (§ 5307. See *Massachusetts etc. Co.* v. *Industrial Acc. Com.* (1917) 176 Cal. 488, 491 [168 P. 1050].) Section 5708 requires, in part: "All hearings and investigations before the appeals board or a referee are governed by this division and by the rules of practice and procedures adopted by the appeals board. . . ."

The importance of the referee's evaluation of the evidence was pointed out in *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312 [90 Cal.Rptr. 355, 475 P.2d 451], wherein the court observed: "Moreover, the board's rejection of petitioner's testimony in this case is contrary to the determination of its own referee, based upon his observation of petitioner on the witness stand, that petitioner in fact suffered an industrial injury on January 5. Although the board is entitled to reject the referee's findings on credibility matters if substantial evidence supports contrary findings, the degree of substantiality required to sustain the board in such cases should be greater than that afforded by the evidence relied upon herein." (3 Cal. 3d at pp. 318-319. See also *Meiner* v. *Ford Motor Co.* (1971) 17 Cal.App. 3d 127, 140-141 [94 Cal.Rptr. 702].) Applicant also alludes to the maxim "The one who decides must hear." (*Morgan* v. *United States* (1936) 298 U.S. 468, 481 [80 L.Ed. 1288, 1295, 56 S.Ct. 906].) These are solid arguments for requiring an evaluation as well as a summary of the evidence from the referee under the circumstances of the instant case. Nevertheless, the procedure promulgated by statute and rule, as noted above, is otherwise. "The requirement of a hearing may be satisfied, however, even though the members of the commission do not actually hear [citations], or even read, *all* of the evidence. [Citations.]" (*Allied Comp. Ins. Co.* v. *Ind. Acc. Com.* (1961) 57 Cal.2d 115, 119 [17 Cal.Rptr. 817, 367 P.2d 409]. See also *Cal. Shipbuilding Corp.* v. *Ind. Acc. Com., supra,* 27 Cal.2d 536, 544.)

From the foregoing it is concluded that the applicant was not as a matter of law entitled to findings of fact and conclusions of law or recommendations from the referee who conducted the hearings after reconsideration.

### III

█ The opinion and decision after reconsideration includes a reference to the referee's report on the applicant's petition for reconsideration (rule 10860) in which he recommended denial of that petition. This reference in turn states, "The decisions were based on the medical opinions of Robert Samilson, M.D. of September 2, 1970; Robert Palmer, M.D. of September 23, 1970 and August 5, 1970; Robert J. Treanor, M.D. of September 10, 1970, and Maurice Eliaser, M.D. of October 1, 1970, as well as the testi-

mony of Drs. Palmer and Treanor at the hearing of October 9, 1970." Applicant contends the appeals board erred in considering material not in the record.

From what has been stated above (part II) it is questionable whether the board can order an entire new hearing, as distinguished from "directing the taking of additional evidence." (§§ 5906 and 5708.) Therefore, the entire record was before the appeals board. (See *Klumpp* v. *Industrial Acc. Com.* (1930) 107 Cal.App. 733, 736 [291 P. 456].)

Even if it were to be determined that because of the nature of the opinion and order granting reconsideration, and the procedure followed thereafter (see part II above), the record should be limited to the evidence taken at the three hearings following the granting of reconsideration, no prejudicial error has been demonstrated. The record reflects that all of the material referred to by the first referee, with the exception of the report of Dr. Samilson, was introduced in evidence at the second hearing. Dr. Treanor was not called to testify, but his reports were used. The body of the final decision and opinion indicates that it is predicated upon an analysis of the testimony of applicant, of Dr. Johnston who performed the December 1971 operation on the applicant, of Dr. Wilson the Kaiser Foundation Hospital orthopedist, of Dr. Gordon the applicant's examining physician, of Dr. Palmer the employer's examining physician, and of the nurse employed at applicant's place of employment who took his complaint April 7, 1970, all of which evidence was taken at the later hearings.

The applicant, in his petition to this court, has himself referred to the report of Dr. Samilson, and pointed out that it recited that applicant had recovered from whatever injury he sustained, not that he was not injured. He also relies upon the report of Dr. Kirkpatrick which was not re-introduced at the rehearings.

It is concluded that whether the proceedings be construed as continuous or as requiring a trial de novo, there was no prejudicial error in the reference to material which was before the referee at the earlier hearings, but which was not brought to the attention of the second referee in the later hearings.

## IV

■ The crucial issue is whether the appeals board erred in finding that the applicant did not sustain an injury arising out of and occurring in the course of his employment. The findings and orders which were ultimately affirmed by the appeals board found that applicant did not sustain any injury arising out of or occurring in the course of his employment on either

September 29, 1969 or April 7, 1970, and ordered that applicant take nothing, other than medical-litigation costs (see part V below), by reason of his claims. The opinion of the appeals board concludes, "In view of the above, the Board is of the opinion applicant's disability is neither related to nor caused by the alleged industrial injuries herein. Therefore, the Board finds that the referee's findings of no industrial injuries is supported by substantial evidence and the record as a whole."

Applicant complains with some justification that the foregoing is a *non sequitur*. Among the issues presented at the rehearing were "1. Injury, arising out of and in the course of employment"; and "5. Nature and extent of disability." From the opinion and decision it appears that the principal issue considered was whether the applicant's lumbar disc disease, for which he received the distraction fusion operation in December 1971, was caused by either or both of those injuries. There was evidence which would support a finding either way, and that reviewed in the opinion and decision of the appeals board after reconsideration supports the conclusion that applicant's then present disability was neither related to nor caused by the alleged industrial injuries. On the other hand, that finding does not necessarily establish that there was no industrial injury, nor that there was not temporary disability, unrelated to any disc condition, which was occasioned by his employment. There is uncontradicted evidence which tends to show that there was an industrial injury for which medical treatment was procured, and for which temporary disability may be payable.

The applicant's testimony at the first hearing concerning the alleged injury of September 29, 1969, is summarized as follows: ". . . he was working the second shift at General Motors and was working on front suspensions. It was necessary to line up the frames and suspensions for three bolt holes. This assembly was tight and he jerked it and then jerked against at which time he felt sharp pain in his left groin that lasted 10 seconds. [¶] He did nothing about it on that day but had occasional pains in that area until October 15 when he could not lift and went to plant medical. Before October 15 he had no treatment from G.M. but had reported to emergency at Kaiser where an appointment was made with Dr. Walter who, when he saw him, was told what happened. Dr. Walter examined him and arranged for light work and referred him to Dr. Snyder who gave him further tests and prescribed medications. At first he had pain in his left groin and a few weeks later had low back pain on the left side at the belt line. [¶] . . . The low back pain came on two or three weeks after September 29 but had increased by August 31 [1970] where it was in the same location."

His testimony on August 17, 1971, concerning this incident, is sum-

marized as follows: "On September 29, 1969, he felt a sharp pain in his groin. He had been pulling and pushing a front end suspension. It is attached to the frame and it is necessary to line up three holes and to use force. He felt a very sharp pain in the left groin and the side of his left leg. He didn't tell anyone about this until October 15, 1969. . . ."

Records of the employer reflect an "Occupational Injury (or Disease) Record" subsequently changed by striking and interlineation to read "*Personal* Record" prepared by a registered nurse at 12:30 a.m. on October 16, 1969. It relates, over the signature of applicant, "I was pulling to line up a front suspension on the frame, and I felt a sharp pain in (L) groin." A blank "Date of Onset" is filled out "10/7/69 . . . 8 P.M." The nurse noted, "Says the pain went away. Two days later doing the same thing, he felt a sharp pain in (L) side. Tonight he has felt the same pain in (L) groin 3 times tonight. Also c/o 'air in Rt. Eye'—cause unknown. [¶] Wants to go home to see PMD. Foreman advised."

On October 17, 1969, the applicant consulted the Permanente Medical Group where Dr. Walter, after taking a history which gave a date of injury of September 29, and a last day of work October 15, and examining the patient concluded, "Both groins negative for herniation, there are no palpable bulges. Impressions: Muscle strain." He recommended the following treatment: "Suggest he avoid heavy lifting for about 10-14 days." Dr. Walter consulted with the employer's medical office and at its request directed applicant to see Dr. Neuru, a company doctor.

When examined that evening by Dr. Neuru, the company doctor, the latter reported, "I reviewed him on the 17th and found no evidence of hernia, nor attenuation of muscle, and because he stated the left area was tender, I allowed him off the operation." On October 21, 1969, Dr. Patterson, the employer's medical director, noted that the applicant complained of "vague, dull and intermittent pains and occasional sharp pains in the left lower quadrant and left splenic area and in the left flank." He found no evidence of hernia or muscle strain and concluded applicant's symptoms were due to chronic constipation. He apparently ordered the change in the title of the report from "Occupational" to "Personal."

According to the applicant's history given to Dr. Kirkpatrick, January 15, 1970, and Dr. Walter's notes of October 24, 1969, the applicant returned to "light duty" on Saturday, October 18, and quit after a half day's work the following Monday because he was returned to heavy lifting work and suffered a return of symptoms in the groin. He apparently returned

to the clinic on October 21 and 24 and was ordered to restrict himself to light work because of muscle strain.

At the first hearing, applicant testified that as a result of the September 29, 1969, injury, he first had a pain in his left groin, and a few weeks later had a low back pain on the left side at the belt line. At the later hearing he testified that he first noticed complaints in the back approximately two weeks after October 15, 1969.

On November 4, 1969, applicant returned to the clinic and complained of pain in the lower abdomen and medial thighs, and that the pain had now become worse. Dr. Nigro, the examining physician, found lower lumbar pains on palpation and noted that the continuing thigh pain did suggest "myositis [inflammation of the muscles]/strain" and that the other pains are of questionable relationship to the original injury as they were not present at the time. The applicant was given a complete physical examination on November 11, 1969 by Dr. Pearl, and a preliminary diagnosis of lumbosacral strain was made. Roentgenograms of the lumbosacral spine on November 11, 1969 were reported as "the bony architecture of the lumbosacral spine is considered to be within normal limits." On November 14 the examination was continued. Applicant complained of increased pain in his back. Further examination was conducted on November 18 by Dr. Snyder, who concluded, "This is a little baffling." The doctor reported he believed the applicant's symptoms but could not readily reconcile them. On November 21, 1969, another doctor observed "Unusual case." An examination by Dr. Kane on November 25 produced an opinion that the patient might possibly have an obturater/iliac-inguinal entrapment syndrome.

On December 4, 1969, the patient was seen by Dr. Snyder and Dr. Hall. The patient reported he had considerable decrease in the left inguinal symptoms, although there was pain on palpations of the left inguinal area. His back pain had essentially resolved and he was markedly improved. The most likely diagnosis was "an acute muscle strain with associated neuropathy and with edema due to reduced activity and dependency." The patient was instructed to gradually increase his activity and to return to work on December 15, 1969. On December 12, 1969, he reported to Dr. Snyder that he was free of backache, groin pain and radicular pain. He was released to return to work as planned, and apparently did so.

The doctors who testified and filed reports in connection with the first and second hearings do not contradict the foregoing account which shows that applicant suffered an injury at work, sought treatment, was advised to avoid heavy work, was treated, was diagnosed as having suffered an

acute muscle strain, and was ultimately released for return to work. The adverse testimony and reports are all concerned with whether the injury, as alleged and established by the applicant, constituted a traumatic back injury which produced the symptoms from which he was allegedly suffering at the time of the hearing of the applications in October 1970. The employer, the referee, and the board in denying the right to compensation rely on the medical opinion that back pains suffered in late October 1969, if attributable to lumbar disc disease could not have been caused by the injury he related, which had its incidence a month before, and was accompanied by symptoms which were not consistent with the disc defects revealed by the 1970 myelogram. This does not explain the applicant's pain, and the diagnosis made by the Permanente physicians. Dr. Walters, before the admitted onset of the back pain, took issue with the employer's physician who apparently prescribed an enema. He ordered the patient to refrain from heavy work. It is ridiculous to suggest that the applicant should have disregarded that advice and returned to work. (See *LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 640.)

Dr. Palmer, the employer's examiner, testified, according to the summary, "the incidents related by applicant were not disabling and only created the need for treatment in the sense that the workups conducted were desirable."

Dr. Treanor concerned himself with the relationship of the injuries to the spinal condition. He acknowledged, ". . . any valid complaints by applicant subsequent to his incidents would be the result of lumbosacral strain or chronic muscle spasm. The right side problem must be a new development." Dr. Samilson's report states, "I believe that he has recovered from whatever injury he sustained without any residual disability whatsoever." Dr. Kirkpatrick who found the applicant was not disabled on January 19, 1970, expressly stated, "I have not had the opportunity to review the Kaiser Permanente medical file and therefore do not know why he was kept from returning to work between October 22, 1969 and December 15, 1969." Dr. Eliaser's report is concerned with the applicant's condition as he found him during his hospitalization between August 31 and September 9, 1970. Again the opinion that the applicant in September 1970 "demonstrates no systemic disease to account for his several musculoskeletal symptoms" and can return to work as of September 14, 1970, has little if any bearing on whether he suffered an industrial injury on September 29, 1969, which disabled him from October 23, 1969, through December 14, 1969.

The applicant's testimony at the first hearing concerning the alleged injury of April 7, 1970, is summarized as follows: ". . . he was working at

G.M. on the second shift. His assignment was on rear suspensions. The line was empty and there were 12 suspensions which had to go on the line. One of the overhead cranes was not working so applicant and his partner had to lift rear suspensions. Half an hour later, applicant got sharp back pain in the same place and the same type of pain that he had subsequent to his September 29 incident." At the hearing August 17, 1971, he described the circumstances giving rise to the necessity for lifting the rear suspension, and then related, as summarized: "He lifted a few rear suspensions and experienced pain in the back so that when he bent down he had difficulty getting back up. . . . He was experiencing groin pain as he had experienced on September 29, 1970. The pain was different from the pain that he had on September 29, 1969, in that the back pain appeared and was added to the groin pain. . . . He was having severe pain in the back at that time and they sent him home."

On reporting to the medical department the nurse noted on his "Personal Injury and Illness Record Non-Industrial," "c/o pain left groin radiating to back—Home to PMD & Bring Release." According to the testimony of the nurse the applicant did not give a history of hurting or spraining his back while lifting something at work, because if he had she would have placed it on an occupational injury sheet. She acknowledged that she had no present recollection of the event while testifying. The record indicates that the following day he appeared with a note from the Kaiser clinic that his work should be restricted and he was sent home. The Kaiser records indicate that he had reported a flareup of low back pain with radiation to the left groin and leg after lifting a heavy object at work. The doctor's impression was acute and chronic low back strain. Thereafter he was off work and seen intermittently at the Kaiser Foundation Hospital. He later, from August 31, 1970, through September 11, 1970, was hospitalized and examined by the employer's examiners who concluded that any lumbar disc disease if it existed at all was not industrially related.

If it be assumed in support of the opinion and decision after reconsideration that the onset of the applicant's lumbar disc disease was not industrially related and first manifested itself in natural course of progression in the latter part of October 1969, the question remains as to whether any activity at work caused it to be aggravated on April 7, 1970. (See *Kammerer* v. *Workmen's Comp. App. Bd.* (1968) 259 Cal.App.2d 518, 524-526 [66 Cal.Rptr. 398].) There is evidence to support the board's finding that the aggravated symptoms which gave rise to the recommendation for and performance of the operation in December 1971, did not manifest themselves until five or eight months after the April 7, 1970, incident. Here again, however, there appears to be a lack of a definite finding as to whether any

of the prescribed and approved absence from work prior to the operation was occasioned by the alleged injury of April 7, 1970, or whether it was due to rashes, edema of the extremities, or degenerative disc disease unaffected by any industrial injury. There is some evidence to support a finding of no industrial injury on April 7, 1970, but its weight is impeached by the fact that it was the nurse, not the employee, who selected the personal rather than the industrial blank, and the nurse's lack of recollection of what actually occurred. (See *Garza* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 312, cf. p. 316, fn. 1 and accompanying text, with pp. 316-317.)

In *Garza,* unlike this case, the referee had found that the failure to report an injury promptly did not impeach the applicant's testimony that his symptoms developed in connection with a strain on the job (3 Cal.3d at p. 316). Moreover, in that case there was no attempt to impeach the applicant's testimony by showing through medical opinion, that he suffered no injury at the time of the occurrence, or by proving that such injury could not have occurred in the manner testified to by him. As is pointed out above, although the evidence in this case supports the appeals board's finding that the applicant's disability, as it is attributable to lumbar disc disease, is neither related to nor caused by the alleged industrial injuries, the opinion and decision after reconsideration does not resolve the questions of whether the incidents occurred in the manner in which applicant testified, and whether the injuries giving rise to disability and medical treatment resulted. Therefore, the following observation in *Garza* is pertinent: "As a general rule, the board 'must accept as true the intended meaning of [evidence] both uncontradicted and unimpeached.' (*LeVesque* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 627, 639; . . .)" (*Id.,* at pp. 317-318. See also *Lundberg* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d 436, 439-440; *McAllister* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal. 2d 408, 412-418 [71 Cal.Rptr. 697, 445 P.2d 313]; and *Rushing* v. *Workmen's Comp. App. Bd.* (1971) 15 Cal.App.3d 517, 520-523 [96 Cal.Rptr. 756].)[4]

Finally it is noted that the present state of the record leaves it uncertain as to whether there was an injury on September 29, 1969, or on April 7, 1970, in the event a claim should be made for new and further disability under the provisions of section 5410.

The matter must be remanded to determine whether or not there was

---

[4]Applicant, whose petition was filed before the effective date of California Rules of Court, rule 977, also relies upon an unpublished opinion of the Court of Appeal, *Atterbury* v. *Workmen's Comp. App. Bd.* (1972) which was reported in 37 Cal. Comp. Cases 29.

any injury arising out of and occurring in the course of his employment on either of the above dates which gave rise to a disability or right to medical treatment, other than for the lumbar disc disease from which the applicant was suffering late in 1970 and in 1971.

## V

Section 4600 provides in pertinent part, " . . . In accordance with the rules of practice and procedure of the appeals board, the employee, or the dependents of a deceased employee, shall be reimbursed for expenses reasonably, actually, and necessarily incurred for X-rays, laboratory fees, medical reports, and medical testimony to prove a contested claim. The reasonableness of and necessity for incurring such expenses to prove a contested claim shall be determined with respect to the time when such expenses were actually incurred. Expenses of medical testimony shall be presumed reasonable if in conformity with the fee schedule charges provided for impartial medical experts appointed by the administrative director."

Rule 10635 provides: "When the evidence adduced in a cause or proceeding demonstrates that expenses, the subject of Labor Code Section 4600, were incurred, recovery thereof will be allowed as they appear, unless: (1) Proof of unreasonableness is entered; or (2) The record of said cause or proceeding makes manifest the unreasonableness of an expense or the expenses claimed."

In the original findings, award and order the referee awarded the applicant "(a) Medical-litigation costs in the amounts to be adjusted by the parties herein." Applicant raised no objection to the form of this award in his petition for reconsideration. The opinion and decision after reconsideration merely ordered that the original award be affirmed. Applicant now contends that the appeals board failed to find on a material issue before it, that is, the issue of the expenses reasonably, actually and necessarily incurred in connection with his attempt to prove his contested claim (see fn. 2 above, issue "4"); and that the appeals board has failed to award such medico-legal expense.

Since 1959 it is established that under the provisions of section 4600 the applicant ". . . whether successful or not, is entitled to be reimbursed for expenses reasonably and necessarily incurred for X-rays, laboratory fees, medical reports and medical testimony to support his claim. (*Subsequent Injuries Fund* v. *Industrial Acc. Com.*, 59 Cal.2d 842, 843-844 . . .; *Turudich* v. *Industrial Acc. Com.*, 237 Cal.App.2d 455, 457 . . .)" (*Garrett* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d

326, 328-329 [65 Cal.Rptr. 721]. See also *Kammerer* v. *Workmen's Comp. App. Bd., supra,* 259 Cal.App.2d 518, 523-524.) In this case there was no denial of medical-legal costs. Applicant's objection is to the form of the order. In his petition he lists numerous bills in the record of the second proceedings which were apparently unpaid when the petition was filed. In its answer to the petition the employer points out that it has paid the expenses listed and that applicant has never made a request for adjustment.

Objections to the form of the original order were waived by the applicant's failure to object to it in his petition for reconsideration. (See § 5904; *U.S. Auto Stores* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 476-477 [93 Cal.Rptr. 575, 482 P.2d 199]; *Bussa* v. *Workmen's Comp. App. Bd.* (1968) 259 Cal.App.2d 261, 264 [66 Cal.Rptr. 204]; and *Heath* v. *Workmen's Comp. App. Bd.* (1967) 254 Cal.App.2d 235, 238 [62 Cal. Rptr. 139].) Nevertheless the applicant was not without his remedy if the employer failed to act reasonably in adjusting and paying the expenses to which the employee was entitled under the provisions of section 4600. Rule 10832 provides: "The Appeals Board or referee may, upon the request of a complaining party, issue an order to show cause directing the employer or insurance carrier to appear and show cause why there has not been compliance with the order, decision, or award of the Appeals Board." If the referee or appeals board fails to act under that rule, the applicant having exhausted his administrative remedies is entitled to relief from the court on making a showing that the award is not being enforced. (See *Betancourt* v. *Workmen's Comp. App. Bd.* (1971) 16 Cal.App.3d 408, 411-413 [94 Cal.Rptr. 9].)

In this case the expenses incurred at the rehearings held pursuant to the appeals board's opinion and order granting reconsideration could not be within the ambit of the referee's original prior award. It is assumed that the final opinion and decision after reconsideration intended to adopt the terms of the original award to the medical-litigation costs incurred in connection with the three later hearings, and that the appeals board did not attempt to deny them. Since the case must be remanded to the appeals board (see part IV above) the matter can be adjusted there without the necessity of an application under rule 10832.

Applicant seeks a ruling that the referee and the appeals board erred in making the award of medical-litigation costs in the form which it did. The board points out that in many cases there is no problem in adjusting such costs, and the referee, the board and the parties are saved the labor and expense of verifying and passing on each bill incurred. In view of the failure of the applicant to raise the point on his petition for recon-

sideration, no opinion is expressed as to the validity of the form of the order. As noted above, the provisions of rule 10832 provide an opportunity for relief. On the other hand, if experience indicated that employers and carriers were forcing applicants to seek such relief instead of adjusting legitimate medical-litigation costs in good faith, a second look at the propriety of such orders would be required.

The opinion and decision after reconsideration of the Workmen's Compensation Appeals Board is annulled and the cause is remanded to that board for proceedings consistent with the views expressed herein.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied March 26, 1974, and petitioner's application for a hearing by the Supreme Court was denied May 22, 1974.